Roy Jones v. State.

183 So. 732.
Division B.
Opinion Filed October 15, 1938.

*Zewadski & Pierce,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Tyrus A. Norwood,* Assistant Attorney General, for the State.

Per Curiam.—Roy Jones, hereinafter referred to as the defendant, was indicted by a grand jury of Pinellas County, Florida, for murder in the first degree, for the killing of Willie Johnson on August 9, 1936. He was arraigned, tried and convicted of murder in the second degree and was by the Circuit Court of Pinellas County, Florida, sentenced to

the State Penitentiary at hard labor for a period of twenty-five years. Writ of error was taken to this judgment and the case is here for review, broadly speaking, on the single assignment of the sufficiency of the evidence to sustain the verdict. This assignment is properly presented by an exception to an order overruling and denying a motion for a new trial seasonably filed on the part of counsel for defendant.

The State adduced James Carroll, alias James Fortune, Lucius Binion and K. M. McPhail, a police officer. The City of St. Petersburg was the scene of the homicide. Carroll, alias Fortune, and Lucius Binion were eye witnesses to the difficulty, while the police officer was about 150 or 175 yards distant therefrom and heard the report of the guns and went to the scene and found Willie Johnson dying from two shotgun wounds. A short distance from the scene, at defendant's place of business, he took defendant into custody, when he admitted the shooting and was suffering from a pistol wound in the hand inflicted by the deceased.

The evidence showed that Carroll and Johnson were hunting snakes near St. Petersburg and found a whiskey still and moved it about one mile distance from the place where found and contacted the defendant and was trying to sell the same to him for $25.00. The defendant, according to the record, owned and operated a beer and wine parlor, and had his home a short distance therefrom. It was not shown that the defendant sold whiskey at his beer parlor, but the defendant stated that he did not take out a license to sell whiskey because it was too expensive. Carroll claimed that the still was sold to the defendant, but this was denied by the defendant, and on trial the defendant claimed that Carroll and Johnson wanted defendant's truck to bring in the still. The brother of the defendant brought from his home a shotgun, after the life of the defendant

had been threatened by the deceased, and the defendant and his brother left the beer parlor in a car with the shotgun shortly prior to the shooting. The car was near where the deceased was located and deceased was by the defendant directed to get in the car, when the shooting began, resulting in the death of Johnson. There is sharp conflict in the evidence on the point of the first report of the gunfire as to whether it was a shotgun or a pistol. The defendant had a 16-gauge pump shotgun, while the deceased had a 38 "Lemon squeeze" pistol. The State's witnesses testified that the report of the shotgun was heard first, while a number of witnesses claimed the pistol report was heard first. The uncontradicted testimony of the officer, McPhail, was clear on this point, as he heard a shotgun report and then four pistol shots, and then a shotgun report. The deceased had two shotgun wounds which caused his death. Shortly prior to the shooting the defendant, it is claimed, accidentally fired the shotgun one time into the ground, and our reading of the record and analysis of the testimony is that Officer McPhail failed to hear this shot as he approached the scene and only heard the six shots fired by the deceased and the defendant.

It is claimed by counsel for plaintiff in error that Carroll, alias Fortune, and Binion, State eye witnesses, were unworthy of belief and a judgment of conviction should not be sustained on their testimony. The physical facts corroborate the testimnoy of these two witnesses and there is but little contradiction between it and that of Officer McPhail. It is argued that these two witnesses were jail birds and did not have good reputations for truth and veracity and that each of them had been convicted of crime. The record seems to sustain this contention, but we have not been supplied with authorities to the effect that these witnesses were disqualified to testify. From our reading of the

record it seems to be the old story of "the kettle calling the skillet black," as the two colored witnesses for the State had been convicted of crime, likewise the defendant, not only in the Courts of Florida, but in Georgia, his former home. A reasonable inference, from all the testimony, is that the whiskey still found by Carroll and Johnson was the property of the defendant and the taking of which caused the fight between the defendant and the deceased.

The defendant's business was patronized largely by darkies. It is contended that the deceased had a reputation as being a bully, had possibly been convicted of crime, and in truth and in fact it was for the public good that he be killed. The record shows that after the conference by Carroll and Johnson with the defendant at his beer parlor they left and were on their way home when the defendant and his brother, armed with a shotgun, left the beer parlor in a car, and, according to defendant's witnesses, they were also on their way home. But the car was parked when the deceased was found, and the defendant, armed with a shotgun, directed that the deceased "get in the car." "What for?" said the deceased to the defendant, when the defendant replied, "You know what for," and then the shotgun was fired, then four pistol shots, and then the shotgun was fired again, when the deceased fell with two mortal shotgun wounds and died near the rear wheel of the car which the defendant was driving. Did the defendant go home as he stated at the beer garden shortly prior to the shooting? The record shows that he followed the deceased, located him, directed him to get in the car—when deceased was on his way home —and when deceased refused to do so, the defendant resorted to the use of his shotgun. When the deceased was dying the defendant, instead of going home, returned to his beer parlor. It is contended that the deceased threatened the life of the defendant at the beer parlor shortly prior to

the shooting. If the deceased desired to kill the defendant according to the threat, what prevented the deceased from doing so when the threat was made? If the defendant was afraid of the deceased, why did he not ask for police protection instead of arming himself with a shotgun loaded with buckshot, and in a car with his brother follow the deceased, and after locating him, park his car and command the deceased to "get in the car," and then shoot him to death? We have given consideration to pertinent testimony in behalf of the defendant given by Mallie Perry, Josh Tillman, Oscar Lewis, Horace Bevell, Herbert Jenkins and Frank Conner. We have not overlooked the contention of the defendant that he believed the deceased would attack him when he placed his car in the garage at the defendant's home. It appears that the verdict here rests on the weight of the evidence and the credibility of the witnesses. It presents purely a question of fact to be settled by a jury under appropriate instructions.

This Court had before it the weight of the evidence and the credibility of the witnesses in the case of Sherman v. State, 17 Fla. 888, and held that a new trial should not be granted on the ground that the verdict is contrary to the law and the evidence, there being evidence to support the verdict, however conflicting the testimony of the witnesses for the respective parties may be, unless it seems that great injustice will result or that the jury acted under improper influences.

In the case of Armstrong v. State, 30 Fla. 170, text 207-8, 11 So. 618, 17 L. R. A. 484, it was said:

"Judge Westcott said: 'The verdict of the jury here is founded on the evidence of facts, complicated and contradictory, which required an investigation into the character and credit of the witnesses, whose testimony it was necessary to compare and weigh. To do this, is the proper

function of a jury. While it is true that this is the proper function and province of the jury, it is at the same time true that in cases where there is conflict in testimony, it is within the province and power of the court to set aside a verdict which does not reach substantially just conclusions in cases where the conflicts are of such character and the circumstances of such nature as to give just ground for the belief that the jury acted through prejudice, passion, mistake or any other cause which should not properly control them. This power exists in the court. In exercising it the court does not encroach upon the province of the jury, for the reason that it does not conclusively settle facts in the form of a verdict, but only gives another jury the opportunity of so doing, and of correcting what appears to be a mistake. If this is not properly within the power of the court, then the result is, that the first twelve men that happen to constitute a jury in a given case are by law the final arbiters of the facts in that case. There is no such principle of law.' And in the case of Wilson v. Dibble, *ibid.,* 47, Judge Randall says: 'It is generally with great reluctance that courts set aside the verdict of a jury upon a consideration of the testimony alone; and a second verdict upon the same facts although the Judges may have come to a different conclusion, is too strongly fortified by the deliberate judgment of twenty-four men, to be disturbed, except for strong reasons. Where the verdict is so palpably against evidence, or against a very strong preponderance, that great injustice seems to have been done, leading to the conclusion that the verdict was the result of prejudice or excitement, or other improper influences, there should be no hesitation about setting it aside.' "

When there is substantial evidence to support a verdict, the verdict should not be set aside as against the evidence unless it may well be assumed that the jury were unlaw-

fully influenced by considerations outside the evidence. See Kirkland v. State, 93 Fla. 172, 111 So. 351; Whitton v. State, 93 Fla. 97, 111 So. 514; Howell v. State, 102 Fla. 612, 136 So. 456; 139 So. 187.

We have given consideration to the case of Council v. State, 111 Fla. 173, 149 So. 13; Fortner v. State, 119 Fla. 150, 161 So. 94; likewise the authorities declaring the law of self-defense and we are in accord with each of these authorities. The jury under the law had a right to believe or disbelieve the two State witnesses, and in their discretion elected to believe them rather than the witnesses offered by the defendant and we have no right under the law to disturb the finding of fact by the jury. The judgment appealed from is hereby affirmed.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.