*May Term,*
*1858.*

McJunkins
*v.*
The State.

*Per Curiam.*—The judgment is affirmed, with 1 per cent. damages and costs.

*J. Perry,* for the appellant (1).

*J. S. Newman* and *J. P. Siddall,* for the appellee (2).

(1) Touching the meaning of the word *bank,* as used in our statutes, Mr. *Perry* cited 1 Bouv. Inst. 41; *Freeman* v. *Robinson,* 7 Ind. R. 321 ; *The Mayor* v. *Weems,* 5 *id.* 549.

(2) Counsel for the appellee cited *Webster's* definition of the word *bank*; and, to the same effect, 14 Johns. 205; 6 Cow. 290; 4 Wend. 498.

---

· McJunkins and Others *v.* The State.

Sections 96, 97 and 98, 2 R. S. p. 374, with regard to arraignment and pleading, apply alike to prosecutions by indictment and information.

On appeal, in such cases, the record must disclose an arraignment and a plea pleaded or entered upon the minutes of the Court.

A separate trial cannot be demanded as a matter of right, after the jury has been sworn, and the evidence partly heard, even if the statute gives the right, when properly claimed, to persons prosecuted by information.

Where there has been no arraignment, and the defendant has not pleaded, *quære,* what would be the effect of a motion to set aside the swearing and impannel- ing of the jury to enable him to plead?

In criminal prosecutions the Court must charge the jury. Upon request by either party, the charge must be in writing. But such request should be made, or written instructions prepared by counsel presented, in time to en- able the Court to give them due consideration. Where the request was not made till the Court was proceeding to give an oral charge,—*held,* that it was too late.

Under the statute against "notorious lewdness or other public indecency," a prosecution will not lie for using obscene language, or singing obscene songs.

The legislature will be presumed to have acted with regard to the settled judi- cial interpretation of words, where a different rule has not been established by that body.

*Tuesday,*
*May 25.*

APPEAL from the *Fountain* Court of Common Pleas.

Hanna, J.—This was a prosecution against six persons for the "offense of public indecency, by then and there, in

the presence and hearing of *Thomas J. McPherin* and his family, singing indecent and vulgar songs, and using vulgar and indecent language." And there is also a charge, that at the same time and place, the same improper conduct was had in presence of *James Wilson* and his family; and that said defendants were "guilty of immodest conduct and public indecency." No motion was made to quash. The record does not show an arraignment, nor any plea. A jury was impanneled, the defendants all placed upon trial, a verdict of guilty found as to all, and different punishment as to each defendant. Motions for a new trial, and in arrest of judgment overruled. Judgment on the verdict. Several errors are assigned which will be noticed in their order.

1. Defendants were put upon trial without having been arraigned, and without a plea pleaded or entered upon the record.

Section 96, 2 R. S. p. 374, says, " The defendant is arraigned by reading to him the indictment, and requiring him to plead thereto. The Court may, for cause shown, grant a reasonable time to answer the indictment." The general issue may be pleaded orally, "which shall be entered on the minutes of the Court," and all matters of defense proved under it; and if the defendant refuse to plead "to an indictment or information, a plea of not guilty must be entered by the Court." Such is our statute; and the three sections 96, 97 and 98 are so intimately blended and connected together, when we consider them with reference to the subject of which they are treating, to-wit, trials of both felonies and misdemeanors, that we can come to no other conclusion than that they apply alike to prosecutions by indictment and information. In the case of *Dart* v. *Lowe*, 5 Ind. R. 131, the record stated that the issues were joined, but it contained no pleas; and notwithstanding that statement, the Court decided that the presumption was that no plea was filed. In this case, the record states that the jury "was sworn to well and truly try the issue joined." We need not stop to inquire whether that was the proper form

May Term,
1858.

McJUNKINS
v.
THE STATE.

of oath, nor whether the presumption ought to be indulged that the defendants had pleaded; for the record shows affirmatively that they had not been arraigned, nor had a plea been pleaded or entered.

It is unnecessary to look to the question of what was the form of a complete arraignment under the former practice. The first sentence of this statute declares the acts necessary to an arraignment now. The indictment must be read to the defendant, and he is thereupon required to plead thereto. The use of the word "required" shows this to be a duty of the Court. This view is strengthened by the next sentence, which prescribes the rule as to granting a reasonable time to answer. How could it be ascertained that time was asked, unless an answer was required? The record should disclose an arraignment and a plea pleaded or entered on the minutes of the Court.

2. The next error assigned is, in not permitting separate trials.

After the jury had been sworn and a portion of the evidence heard, defendant *James McJunkins* moved the Court to allow him a separate trial, on the ground that no arraignment had taken place, nor had he pleaded, and that he was surprised by the evidence. After the jury had been sworn, and the evidence partly heard, it was too late to demand, as a matter of right, to be tried separately; even if the statute gives that right when properly claimed, to persons prosecuted by information. The defendant should, if he was entitled to it, have availed himself of the privilege at an earlier stage of the proceedings. If a separate trial could be claimed, as a matter of right, after part of the evidence was heard, why not after all had been produced? The right to claim a separate trial at any stage of the proceedings, would, in our Courts, where the terms are of limited duration, tend to defeat the ends of justice.

We do not decide what would have been the effect of a motion by either of the defendants, upon a proper case made, to set aside the impanneling and swearing the jury, to enable him to plead.

3. The Court erred in giving an oral charge to the jury,
when all instructions were required by the defendant to be
in writing.

The statute is as follows: " The Court must then charge
the jury." This language occurs under the order of pro-
ceeding with, or conducting, trials in criminal cases, and is
the fifth and last division of the statute upon that subject.
It appears to be imperative upon the Court to charge the
jury (*Littler* v. *Smiley*, 9 Ind. R. 116); but what that charge
shall contain, and how it shall be embodied and delivered,
is not there provided for. See § 103, 2 R. S. p. 374. The
same statute (§ 113) provides that " The judge must charge
the jury in writing, when either party requests it, and the
charge shall be filed among the papers of the cause." This
sentence, when considered alone, would appear to indicate
that it is not the duty of the Court to charge the jury, un-
less requested by one of the parties. This is certainly a cor-
rect position in regard to requiring the charge to be reduced
to writing, but not in relation to the duty of the Court to
charge the jury generally. It is obligatory on the Court,
when requested at the proper time, to give none but writ-
ten charges to the jury. 5 Ind. R. 375. But as it is the
practice in most of our Courts for the party asking a charge,
upon one or more questions, to prepare such, and present
the same to the Court, accompanied with the request that
all charges shall be in writing (if it is so required), we can-
not conceive that it was the intention of the law-makers
that such should be given, or refused, and no more. 5 Ind.
R. 453. Indeed, the next sentence in the same section, in
connection with the fifth provision as to trials, we think,
settles this. It runs thus: " In charging the jury, he must
state to them all matters of law which are necessary for
their information in giving their verdict."

If the case was long and complicated, and the business
in Court pressing, it would assuredly be a great hardship
upon the presiding judge to require him, at a moment's no-
tice during the confusion of a trial, to prepare in writing,
such instructions as would do justice to himself and the
parties. If it is said he might adjourn the Court to give

time to prepare such charges, this would, in such case, be detrimental to the interest of other parties litigant. The better rule would appear to be, to require such instructions to be presented, or request made, in time to receive due consideration by the judge. Such is the law as to instructions prepared by a party. 2 R. S. p. 110.—9 Ind. R. 420. It is usual for each Court to adopt rules of practice upon this subject. We are not informed whether any such had been adopted by the *Fountain* Court of Common Pleas. In this case, the request was not made until the Court was proceeding to give an oral charge to the jury, and was, therefore, not made in time.

4. The next error assigned is, in overruling the motion in arrest.

Several reasons are urged in arrest of judgment in this case, the first of which is, that the information does not charge a public offense; and it is argued that singing vulgar and indecent songs, to the annoyance of a man and his family, may, in some instances, amount to a private nuisance, and furnish ground for a private action, but cannot be the ground of a public prosecution. Our statute is as follows: "Every person who shall be guilty of notorious lewdness, or other public indecency, upon conviction," &c. No offenses except such as are defined and forbidden by statute are punishable. 8 Ind. R. 494. The word *indecency* is defined by *Webster* to mean "That which is unbecoming in language or manners; any action or behavior which is deemed a violation of modesty, or an offense to delicacy, as rude or wanton actions, obscene language; and whatever tends to excite a blush in a spectator." By *Bouvier*, in his Law Dictionary, it is said to be "An act against good behaviour and a just delicacy." Examples are given by the author, such as exposure of the naked person in public, or an exhibition of bawdy pictures, &c. In Jacobs's Law Dictionary, "grossly scandalous and public indecency" is classed under the term lewdness, and instances are referred to, such as the examples given in *Bouvier*. In Chitty's Crim. Law, vol. 2, p. 42, divers forms of indictments are given for exposing the naked person publicly;

for publishing, selling, or keeping for exhibition, obscene
books, prints, or pictures; but no form of an indictment is
given for using obscene language. In Blackstone's Com-
mentaries, 4th book, p. 65, in the chapter which treats of
offenses against *God* and religion, the eleventh offense is
termed "lewdness," and under this term is classed "grossly
scandalous and public indecency," such as exposing a
party's person, and also, publicly selling and buying a
wife, &c.

It would therefore appear that the term *public indecency*
has no fixed legal meaning—is vague and indefinite, and
cannot in itself imply a definite offense. And hence, the
Courts, by a kind of judicial legislation, in *England* and
the *United States*, have usually limited the operation of
the term to public displays of the naked person, the publi-
cation, sale, or exhibition of obscene books and prints, or
the exhibition of a monster—acts which have a direct bear-
ing on public morals, and affect the body of society.

Thus, it will be perceived that so far as there is a legal
meaning attached to the term, it is different from, and more
limited than, the commonly accepted meaning given by
*Webster* to the word indecency. The legislature will be
presumed to have acted with reference to such judicial
construction, unless a different rule has been prescribed by
that body. 5 Blackf. 384.—7 Ind. R. 94. The law upon
the construction of statutes and definition of terms is as
follows: "Words and phrases shall be taken in their plain,
or ordinary, and usual sense. But technical words and
phrases, having a peculiar and appropriate meaning in law,
shall be understood according to their technical import."
Subject, nevertheless, to this limitation, to-wit,—" Unless
such construction be plainly repugnant to the intent of
the legislature, or of the context of the same statute." 2
R. S. p. 339. As we have already seen, the plain, ordinary
and usual sense of the term *indecency*, includes certain im-
proprieties of language, as well as wrongful acts. Was it
the intention of the law-makers to declare the use of such
improper language a punishable offense in this form?

A statute relative to a misdemeanor of the grade and
VoL. X.—10

character of this, and prescribing so severe a penalty as the deprivation of liberty by imprisonment, ought to be clearly worded, so as to leave no doubt or ambiguity about its meaning, before it should be construed to include a large and undefined class of offenses against morality. Especially this ought to be the case where the practical operation of similar statutes had been before such enactment made to exclude those offenses. The statute, under such circumstances, should be in itself explicit, and should not depend for vitality upon another act defining the meaning of words. For instance, if the legislature had intended the term *public indecency* to be so understood in this act as to comprehend and punish improprieties of language, as well as improprieties of conduct, to which it had before that time been limited by the current of judicial decisions, a very few words would have made that intention manifest.

If the statute is given the broad construction contended for by the prosecution, who is to determine what peculiar phrases amount to an offense under it? Is the public sentiment of each locality to be reflected through the jury? Taking these things into consideration, we think it is plain that it was not the intention of the legislature to create, by this statute of definitions, a large class of new offenses, nor to say that a particular phrase, although it has not a technical meaning, shall be construed contrary to the current of judicial decisions.

*Per Curiam.*—The judgment is reversed.

*E. A. Hannegan,* for the appellants.

*D. C. Chipman,* for the state.