The Chief Justice
delivered the opinion of the court.
Sherman was indicted by the grand jury of Leon county for an assault with “intent of him, the said William Sherman, with a knife, with which he was then and there armed, feloniously, wilfully and maliciously, and of his malice aforethought, the said Flavius J. Christie then and there to kill and murder.”
He was tried and convicted and sentenced to imprisonment in the State Prison for five years, and to pay the costs of prosecution. To reverse this judgment a writ of error is prosecuted.
The first error assigned relates to a portion of the charge of the judge, and is abandoned.
I. The second is that “the court below erred in refusing to give in charge to the jury the written instructions on points of law presented and asked for by counsel for defendant, to-wit.” Then follows the matter of the particular instructions prayed to be given, being five several specifications.
The third error assigned is that the court refused to give in charge (as in second error assigned), and' “in failing to give and read the court’s instructions in writing to the jury, and to inform the said jury by written instructions what the said written instructions as presented by the counsel ' for the defendant were, as requested by counsel for defendant, and in the failure of the said judge to charge the said jury which of said instructions, as asked by counsel for defendant, were given, and which refused;” and in stating to the jury that he refused to. give the instructions, without stating to the jury what such instructions so asked for were.
1. The record shows that “these instructions were refused, the court declaring that the substance, so far as pertinent, had been previously given, * * and the said judge refusing in writing to give in charge to the jury the said written instructions on points of law, as requested by counsel for defendant, for the reasons aforesaid; and then and there failed to read written instructions to the jury, and to inform the said jury in writing what the said written instructions, as presented by counsel for defendant, were, as requested by counsel for defendant; and the said judge then and. there stated in writing to the jury that he refused to give the instructions upon the points of law presented by counsel for the defendant without stating what such instructions, so asked for, were.” Td all which action and refusal the defendant excepted.
There was no “request in writing, before the evidence in the case waq closed,” that the judge should “charge the jury in writing.” Instructions by the judge to the jury,, whether given of his own motion without request or upon written instructions presented to him by counsel, constitute the “charge” of the court. The second section of chapter 2096, laws of 1877, is a proviso to the first section, ancLby its provisions the judge is not required to give his charge or instructions in writing to the jury, unless a request in writing be made by parties or attorneys before the close of the evidence, in criminal cases not capital. The object of-the statute in requiring 'the party to make his request in writing before the close of the evidence is that the judge may have .sufficient time to consider and to write out his instructions t'o the jury. 10 Ind., 143; 12 Id., 529.
In this case the record does not disclose that either party requested of the judge in writing, before the close of the testimony, that the charge should be in writing. If that had appeared, it would have presented a case that is not now here. It does appear, however, that the-judge stated in writing to the jury he “refused to give the instruct-tiens asked for,” and that the reason for such refusal was that the substance of the instructions had already been given, .so far as they were pertinent.
'2. It has been the ruling of this court, uniformly, that it is not error ‘if the judge refuses to repeat instructions already substantially given. (13 Fla., 636; 16 lb., 76; 12 lb., 562.) The statement of the court appearing in the record that he had already charged all that was pertinent in the instructions prayed, cannot be reviewed in the absence of the charge’ which he had given; for without such charge we cannot sáy that such statement is not true. If the party desired a review of the oral charge, he should have brought it up by his bill of exceptions.
3. As to the point that the instructions prepared by counsel should1 have been read to the jury with, -the rilling of the court thereon; the statute does not require* it as to such of them as aie refused. The law, (sec. 1, chap. 2096,) says it shall be the duty of the judge “to declare in‘ writing to the jury his ruling thereupon as presented and pronounce the same to the jury as given or refused.” If “given,” he reads them to the jury and so declares. If refused, he is not required to read them, but to inform the jury (in writing if duly requested) that they are “refused.” He is not required to read- in detail to the jury what counsel has prepared, if he determines that it should not go-to them. Nothing could'be accomplished by it, as the party has all the advantage of the refusal by exception to the ruling' that he could-likve if it Were read. It is of no consequence to -the jury what 'is contained in the rejected paper, as they are not to be .'governed by it, and-have no use for it'. (We will say, however, in respect to each of the instructions asked for by defendant, that they do not seem to us to be strictly* applicable to the facts as proved on the trial.)
The fourth assignment of error was abandoned.
II. The fifth error assigned is that the court erred in overruling the motion in arrest of judgment, on the ground “that the indictment does not charge .an offence known to the laws of Florida.” The point of the motion is that the indictment charges “an assault with intent feloniously, wil-fully, maliciously and of his malice aforethought to kill and murder,” and because an assault with an intent to murder is a felony by the laws of 1868, (sec. 34, page 67,) and an assault with intent- to kill is a misdemeanor by the act of 1832, (sec. 36, No.’ 55, Thomp. Dig., 490,) the indictment charges two distinct offences in • one count, a felony and a • misdemeanor, it is claimed that it cannot stand.
The ground of the motion is that the indictment does not charge an offence known to the laws» but the argument is that it charges two many offences in one court,” which cannot.be so joined according to the rules of the law.
In disposing Of the fifth ground assigned for error, we take a different view of- the statutes in force applicable to the case, and cannot apply the ingenious argument of counsel for plaintiff in error. He assumes that the two statutes above cited are in force, and to be construed in connection with the language of the indictment, “with intent * * *, to kill and murder.”
The act of 1832 referred to, makes an “assault with intent to kill” a misdemeanor. The first section of sub-chapter 3, of chapter 1637, Laws of 1868, is as follows: “The kiling of a human being without the authority of law, by poison, shooting, stabbing, or any other means, or in any other manner, is either murder, manslaughter, or excusable or justifiable homicide, according to the facts and circumstances, of each case,” The act then proceeds to define the several degrees of murder and.of manslaughter, and what shall be deemed justifiable or excusable homicide. Section 34 provides for the punishment of an “assault with intent to murder.” Section 46 provides for the punishment of an “assault with intent to commit * * * manslaugh *230 ter,” and the penalty prescribed makes it a felony under our laws.
The act of 1868; in, the sections referred to, designates every act of killing as murder or manslaughter, unless justifiable or excusable, and prescribes penalties for every act done with intent to commit such offences. These provisions are utterly inconsistent with the act of 1832, relating to an "assault with intent to kill,” covering every conceivable case that was included in that act, and imposes a different penalty, charging also the grade of the offence. The law of 1832 is therefore superseded and repealed by the act of 1868, and the result is that any intent to kill a human being is an intent to commit murder or manslaughter, when the intended act would not be justifiable or excusable.
This indictment charges an assault with intent feloni-ously, wilfully, maliciously, and of his malice aforethought, to "kill and murder” IJlavius T. Christie. This is a description of the crime of murder, and follows the form used by the courts for that purpose for ages. It is not a charge of intent to commit the crime of manslaughter, but the crime of murder; thought it may include manslaughter, the offence described is an intent to commit murder, and not merely the lesser offence.
The motion in arrest of judgment was properly denied.
III. The sixth and last error assigned is the refusal of the court to grant a new trial upon the ground that the verdict was contrary to the law and the evidence in the case, and because of newly discovered evidence.
It is unnecessary to enter into a detailed statement of all the testimony of the various witnesses at the trial. Christie, the injured man, was set upon by some ten or fifteen persons, in Tallahassee, was knocked down, and one (Bichard- Woolfordj) got upon him. Two witnesses, Christie and Merritt, prove the words of Sherman, “damn him, kill him,” &c. Tom Williams saw Sherman cut Christie, and Sol Lewis heard Sherman say he and Gadsden had cut Christie, and talk about making "hash of the damned man.” George Woolford and Saunders, defendant’s witnesses, were with Sherman, and did not see him have anything to do with the affray, or hear him say he had cut Christie. Wallace’s testimony is but the expression of his opinion of Williams’ veracity,- and does not show bad reputation in the community. Adam Pope mfet Williams in the evening a mile from Tallahassee, and did not see him there at the time of the affray. McWilliams saw Gadsden cut Christie, and did not see Sherman do it. Mr. 'Nims testified that the moon did not rise until 10:40 o’clock that night.
As to the sufficiency of this testimony, and the veracity of the witnesses, the jury were the sole judges. There was strong testimony against Sherman’s guilt, and so far as there was conflict the jury were the proper arbiters. There was testimony enough to convict, if the jury believed it, and they seem to have believed it.
We do not think we ought to interpose our judgment, even if we differed with the jury in their conclusions. The rule is otherwise unless we can discover some evidence that the jury were improperly influenced. We can see no ground upon which to disturb this verdict, as against the evidence or the law.
As to the application for a new trial on the ground of newly discovered evidence, there was no affidavit or other proof that it had any existence.
The judgment is affirmed.