**SALEM INN, INC., et al.,**
**Plaintiffs,**

v.

**Louis J. FRANK, Individually and as Police Commissioner of Nassau County et al., Defendants.**
No. 73–C–1200.

United States District Court,
E. D. New York.

Sept. 6, 1973.

Kassner & Detsky by Herbert S. Kassner and Paul E. Warburgh, Jr., New York City, for plaintiffs.

Joseph Jaspan, County Atty., Nassau County, Mineola, N. Y., for defendant Louis J. Frank; Louis Schultz, Mineola, N. Y., of counsel.

Joseph H. Darago, Manhasset, N. Y., for defendant Frank Doran.

Ressa & Nappi, Port Washington, N. Y., for defendant Howard Einhorn; Ralph A. Nappi, Port Washington, N. Y., of counsel.

BARTELS, District Judge.

Plaintiffs are domestic corporations operating bars at various addresses in the Town of North Hempstead, and provide for their customers entertainment in the form of topless dancing. On July 17, 1973, the Town of North Hempstead passed Local Law No. 1–1973,[1] making

---

1. Local Law No. 1–1973 provides, in part:
"SECTION 3.0—PROVISIONS

1. It shall be unlawful for any person conducting, maintaining, or operating a cabaret, bar and/or lounge, dance hall, or discotheque, or any other public place within the Town of North Hempstead to suffer or permit any waitress, barmaid, entertainer, or other person who comes in contact with, or appears before, or is likely to come in contact with or appear before persons with breasts uncovered in such a manner that the position of the breast below the top of the areola is not covered with a fully opaque covering, or the lower part of the torso uncovered or so thinly covered or draped as to appear uncovered; or to appear in any scene, sketch, act or entertainment with breasts or the lower part of the torso uncovered or so thinly draped as to appear uncovered. Reference to breasts in this section refers to females only. Reference to the lower part of the torso refers to both male and female.

2. It shall be unlawful for any person to appear in any cabaret, bar and/or lounge, dance hall, or discotheque or any public place with breasts uncovered in such a manner that the portion of the breasts below the top of the areola is not covered with a fully opaque covering, or the lower part of the torso uncovered or so thinly covered or draped as to appear uncovered; or to appear in any scene,

it unlawful (i) for any person conducting or operating any bar, lounge or other public place to permit a waitress, bar maid or entertainer to appear with uncovered breasts, or (ii) for any person to appear in any bar, lounge or public place with uncovered breats or to appear in any entertainment or sketch with uncovered breasts. The maximum penalty for a violation is a fine of $500 or imprisonment for fifteen days, or both, each day's violation constituting a separate violation.

Plaintiffs seek injunctive and declaratory relief, pursuant to 28 U.S.C. §§ 2201 *et seq.* against the enforcement by the defendants of the Local Law, charging a violation of their civil rights under 42 U.S.C. § 1983. On August 9, 1973, they moved for a preliminary injunction and at the same time for a temporary restraining order. The temporary restraining order was denied by Judge Dooling and the return date for the motion for preliminary injunction was fixed by consent for August 22, 1973. On August 10, 1973, after the denial of the temporary restraining order but before the hearing on the preliminary injunction, one of the plaintiffs, M & L Rest, Inc., resumed its entertainment consisting of topless dancing, and consequently on that day and each of the three successive days the owner and the dancers were served with criminal summonses for violating the ordinance, and a hearing was set therefore in the Nassau County Court for September 13, 1973. It is uncontested that plaintiffs in the operation of their bars have for a

number of years permitted female dancers to appear on the stage with uncovered breasts in order to provide entertainment for their respective customers. Since the passage of the law all plaintiffs but M & L Rest, Inc. have discontinued the topless dancing entertainment in their bars. Plaintiffs allege that the ordinance is unconstitutional because it inhibits the full exercise of their First Amendment freedoms and is overbroad, claiming that they should not be required to defend criminal prosecutions to vindicate their constitutional rights, citing, among other authorities, Dombrowski v. Pfister, 380 U.S. 479, 85 S. Ct. 1116, 14 L.Ed.2d 22 (1965), and Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). They claim irreparable harm resulting from substantial loss of business and threatened bankruptcy. While this claim has not been established, it has not been denied.

**I**

For the reasons hereinafter stated the Court finds that the ordinance is facially unconstitutional. Although *Dombrowski*[2] and *Zwickler* sanction federal intervention, the Court is faced with the restrictions placed upon such anticipatory challenges to a state ordinance by Younger v. Harris, 401 U. S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); Dyson v. Stein,

---

sketch, act, or entertainment with breasts or the lower part of the torso uncovered or so thinly draped as to appear uncovered. Reference to breasts in this section refers to females only. Reference to the lower part of the torso refers to both male and female."
"Public Place" is defined in Section 2.0 as "Any room, place, or space which is occupied or arranged to be occupied for recreational, amusement, social, sports, serving of food, or similar purposes; or any building, shed or enclosure, whether indoor or outdoor, coming within the occupancy and other similar classifications of this section. For the purposes of interpretation, the term 'public place', where

used in this law, shall include the term 'public assembly' or 'assembly' as may be used in other codes, laws, ordinances, rules or regulations, as may be applicable in the Town of North Hempstead."

2. In *Dombrowski* indictments had been returned in the state court prior to the decision of the Supreme Court which issued a mandate including directions for "framing of a decree restraining prosecution of the pending indictments against the individual appellants . . ." 380 U.S. at 497, 85 S.Ct. at 1127.

401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971), and Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971). Those cases held that the federal courts were precluded, except in "exceptional and extremely limited circumstances," from intervention by way of either injunctive or declaratory relief in any existing state criminal prosecutions. Such extraordinacy circumstances may be found (1) where there is harassment and bad faith by the local officials in enforcing a state statute or ordinance, or (2) where irreparable injury might result from the enforcement of a statute that is "patently and flagrantly unconstitutional on its face." See *Younger,* and companion cases, *supra.* Thus, the principles of *Dombrowski* and *Zwickler* must be administered with great caution and with the realization that their sweep has been somewhat curtailed. In short, where the state has already initiated criminal proceedings, the Court must not reach out and enjoin the same absent extraordinary circumstances. Explicitly left open by the Supreme Court was the question "about the circumstances under which federal courts may act when there is no prosecution pending in state courts at the time the federal proceeding is begun." Younger v. Harris, *supra,* 401 U.S. at 41, 91 S.Ct. at 749. In Lake Carriers' Association v. MacMullan, 406 U.S. 498, 509, 92 S.Ct. 1749, 1757, 32 L.Ed.2d 257 (1972), Mr. Justice Brennan seemed to answer the question stating that "in the absence of a pending state proceeding . . . . exercise of federal court jurisdiction ordinarily is appropriate if the conditions for declaratory or injunctive relief are met." Other cases following *Younger* have permitted federal intervention even though a state proceeding was initiated one day after the federal proceeding. Boraas v. Village of Belle Terre, 476 F.2d 806 (2d Cir. 1973); Kennan v. Nichol, 326 F.Supp. 613 (W. D.Wis.1971).

In this case there was no state proceeding pending on August 9th at the time the complaint was filed and the ap-

plication for a temporary restraining order heard. It was not until August 10th after the denial of the restraining order that a summons was served and state prosecution initiated with respect to one of the plaintiffs who refused to observe the ordinance. But this was after this Court assumed jurisdiction. The remaining two plaintiffs continue their compliance with the Local Law and are not subjected to any state proceeding. A hearing in the county court on the presently pending criminal proceeding against M & L Rest, Inc. is scheduled for September 13, 1973, and there is no indication as to when a final determination will be made by the county court. Even when made such a determination may not necessarily dispose of the claims of the other two plaintiffs. Assuming that this state proceeding against M & L Rest, Inc. was pending at the time the federal proceeding was begun, this circumstance would not be a sufficient reason for abstention with respect to the other two plaintiffs who have complied with the ordinance but are threatened with prosecution upon violation. We do not believe these plaintiffs should be forced to violate the Local Law affecting their First Amendment rights, and subject themselves to a criminal prosecution in order to place themselves before the same judicial forum scheduled to decide the case of the other plaintiff, M & L Rest, Inc. See Wulp v. Corcoran, 454 F.2d 826 (1st Cir. 1972). Moreover, a prior state court decision, Brandon Shores, Inc. and Patricia A. Soll v. Incorporated Village of Greenwood Lake, 68 Misc.2d 343, 325 N.Y.S. 2d 957 (Sup.Ct.Orange Co.1971), upheld a similar ordinance without facing the constitutional issue involved. See Dombrowski v. Pfister, *supra*; Zwickler v. Koota, *supra.*

We conclude, therefore, that under the circumstances the pendency of a state court proceeding against one of the federal plaintiffs should not bar the others from anticipatory federal relief. See Thoms v. Heffernan, 473 F.2d 478 (2d Cir. 1972). If federal relief is

granted to these two plaintiffs, it would be anomalous not to extend it to all plaintiffs. Likewise, arrest and the direct and immediate fear of arrest and prosecution under the Local Law is requisite "injury" to afford the necessary standing for plaintiffs to institute the action. See Police Department of Chicago v. Mosley, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972); Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L. Ed.2d 228 (1968).

■ Defendants' reliance upon the federal anti-injunction statute, 28 U.S.C. § 2283, which with certain exceptions expressly restrains a federal court from enjoining a state court proceeding, is misplaced. This statute is not applicable to a civil rights action which falls within the statutory exception and where injunctive relief is not otherwise barred by the principles of *Younger*. Mitchum v. Foster, 407 U.S. 225, 92 S. Ct. 2151, 32 L.Ed.2d 705 (1972); Sheridan v. Garrison, 415 F.2d 699 (5th Cir. 1969).

## II

Defendants argue that the justification for the ordinance is the exercise of police power by the local community to bar conduct it deems offensive to its own general welfare, public safety, order and morals. Defendants maintain that the principles enunciated in Paris Adult Theatre I, et al. v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973), and Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), justify the constitutionality of this particular ordinance under some community standard test. They argue that in both of those cases the Court upheld anti-obscenity legislation by adopting a "contemporary community standard" test and holding that community welfare could be debased "by crass commercial exploitation of sex." This argument is difficult to follow because in a non-obscenity context there is no "contemporary community standard" test that would justify a restriction upon plain-

tiffs' First Amendment freedoms. Miller v. California, *supra*.

Other authorities cited by the defendants in support of the ordinance are *Brandon Shores, supra,* and California v. LaRue, 409 U.S. 109, 93 S.Ct. 390, 34 L. Ed.2d 342 (1972). *Brandon* upheld an ordinance in many respects similar but not as broad as the ordinance herein involved. The Court there found that the Village of Greenwood Lake acted properly and within the limits of its police power. No reason was given why plaintiffs' First Amendment rights were not violated or on what basis the police power of the state could so easily brush aside plaintiffs' constitutional guarantee of freedom of speech. With all due deference to the state court, this Court finds that it cannot adopt its rationale.

■ In California v. LaRue, *supra,* it was held that the California State Liquor Authority had a right to regulate topless dancing in bars and cabarets within the purview of its authority to control the sale of alcoholic beverages under the Twenty-First Amendment. This decision is cited for the principle that the privileges and immunities of the First Amendment are not absolute or without limitation. Obviously *LaRue*, which is predicated upon the powers of the State Liquor Authority, has no relevance to the constitutionality of the present ordinance, which has no other justification than the exercise of the police powers of the community. While it is true that the police power of the state may be invoked for the protection of society, it cannot be exercised in a manner inconsistent with the peaceful expression of the plaintiffs' constitutionally protected First Amendment rights. Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1962); see also Miller v. California, *supra,* 93 S.Ct. at 2616, n. 8.

We recognize, as stated in Younger v. Harris, *supra,* 401 U.S. at 51, 91 S.Ct. at 754, that "the existence of a 'chilling effect,' even in the area of First Amendment rights, has never been considered a

sufficient basis, in and of itself, for prohibiting state action. Where a statute does not directly abridge free speech, but—while regulating a subject within the State's power—tends to have the incidental effect of inhibiting First Amendment rights, it is well settled that the statute can be upheld if the effect on speech is minor in relation to the need for control of the conduct and the lack of alternative means." However, we cannot escape the conclusion that there is more than simply a "chilling" effect upon First Amendment rights in the enforcement of this ordinance.

### III

Turning to the merits of the application, it appears clear that dancing is a form of expression protected by the First Amendment. In fact, this is not denied by the defendants, who admit that no question of obscenity is here involved and that even dancing in the nude may fall within the purview of First Amendment protection. See California v. LaRue, *supra*; PBIC, Inc. v. Byrne, 313 F.Supp. 757 (D.Mass.1970), judgment vacated and remanded to consider mootness, 401 U.S. 987, 91 S.Ct. 1222, 28 L.Ed.2d 526 (1971); Southeastern Promotions, Ltd. v. Atlanta, 334 F.Supp. 634 (N.D.Ga.1971); Southeastern Promotions, Ltd. v. Mobile, 457 F.2d 340 (5th Cir. 1972); Yauch v. State, 19 Ariz.App. 175, 505 P.2d 1066 (1973); In re Giannini, 69 Cal.2d 563, 72 Cal. Rptr. 655, 446 P.2d 535 (1968).

It also appears that the ordinance is so broad that it "sweeps within its ambit other activities that in ordinary circumstances constitute an exercise of freedom of speech." Thornhill v. Alabama, 310 U.S. 88, 97, 60 S.Ct. 736, 742, 84 L.Ed. 1093 (1940). Moreover, there is no room in the ordinance for "a state construction which might obviate the need for a decision on the constitutional issue." Zwickler v. Koota, *supra*, 389

U.S. at 256–257, 88 S.Ct. at 400 (Harlan, J., concurring). The local ordinance here attacked not only prohibits topless dancing in bars but also prohibits any female from appearing in "any public place" with uncovered breasts. There is no limit to the interpretation of the term "any public place." It could include the theater, town hall, opera house, as well as a public market place, street or any place of assembly, indoors or outdoors. Thus, this ordinance would prohibit the performance of the "Ballet Africains" and a number of other works of unquestionable artistic and socially redeeming significance. The ordinance would also prohibit the production of the musical performance "Hair," which included a female topless performer but was protected against prosecution under a Massachusetts obscenity statute. See PBIC, Inc. v. Byrne, *supra*. We, therefore, believe that on its face as drawn the ordinance is constitutionally invalid as an infringement upon plaintiffs' First Amendment freedoms.

In conclusion, we find that (1) Local Law No. 1–1973 of the Town of North Hempstead is on its face violative of plaintiffs' First Amendment rights in that it prohibits across the board non-obscene conduct in the form of topless dancing, and (2) that the daily penalty of $500 for each violation of the ordinance, the prior state court decision validating a similar ordinance, the overbreadth of the ordinance, and the potential harm to plaintiffs' business by its enforcement justify federal intervention and injunctive relief.

Therefore, it is hereby ordered that pending the final determination of this action the defendants and each and everyone of them are hereby enjoined from prosecuting the plaintiffs for any violation of Local Law No. 1–1973 of the Town of North Hempstead or in any way interfering with their activities which may be prohibited by the text of said Local Law.