**STATE of Indiana, Appellant,**

**v.**

**Connie Sue BAYSINGER et al., Appellee.**

**STATE of Indiana, and Lake County Prosecutor, Appellant,**

**v.**

**Sue CLARK, Appellee.**

**CITY OF SOUTH BEND, Michael Borkowski, Dean Bolerjack, Indiana State Police, William E. Voor, Jr., Appellants,**

**v.**

**KITTY KAT LOUNGE, INC., Donald E. Senst d/b/a The Spot Bar Riverview Lounge, Inc., Appellees.**

Nos. 1078S202, 978S193 and 1078S227.

Supreme Court of Indiana.

Dec. 3, 1979.

Rehearings Denied Feb. 4, 1980.

Theodore L. Sendak, Atty. Gen., Jane M. Gootee, Deputy Atty. Gen., Indianapolis, for appellants.

Jerrald A. Crowell, Fort Wayne, for appellee Connie Sue Baysinger et al.

Lee J. Christakis, Richard C. Wolter, Jr., Gary, for appellee Sue Clark.

Robert L. Stephan, South Bend, for appellee Kitty Kat Lounge, Inc., Donald E. Senst d/b/a The Spot Bar Riverview Lounge, Inc.

PIVARNIK, Justice.

The Indiana Supreme Court has exclusive jurisdiction of these causes pursuant to Ind. R.Ap.P. 4(A)(8) since these are appealable cases in which a state statute, Ind.Code 35–45–4–1 (Burns Supp.1978) has been held to be unconstitutional by trial courts.

In the *Clark* case plaintiff filed a complaint for declaratory judgment against the State of Indiana which was amended on November 28, 1977. The Lake County Prosecutor's office filed a Motion for Judgment on the pleadings and the Attorney General's office filed a Motion to Dismiss, both of which were denied. After a short evidentiary hearing on February 24, 1978, the State's Motion to Dismiss and Motion for Judgment on the Pleadings were renewed. On May 9, 1978, the court entered judgment finding Indiana Code § 35–45–4–1 (Burns 1978) to be unconstitutional and restraining and enjoining the defendants from enforcing it. This appeal followed.

In *Baysinger, et al.,* each of the appellees was charged with indecent exposure pursuant to Ind.Code § 35–45–4–1 (Burns 1978), by informations filed in Allen Superior Court. A Motion to dismiss was filed on February 16, 1978, alleging vagueness and/or overbreadth. This motion was granted on May 17, 1978, and the cause dismissed. A motion to correct errors was filed and denied. On October 13, 1978, the State's motion for consolidation of appeal was granted by order of the Indiana Supreme Court. Pursuant to Ind.R.Ap.P. 5(B) eleven cases were consolidated under Cause No. 1078 S 202 for appeal.

In *Kitty Kat Lounge, Inc., et al.,* the owners and operators of taverns and bars were ordered to cease offering nude dancing as entertainment. Appellees ceased to have nude dancing and filed a complaint for temporary and permanent injunction and restraining order against the State seeking to have Ind.Code § 35–45–4–1 declared unconstitutional, alleging substantial loss of income. Their motion for a permanent injunction was granted upon a finding by the trial court that the nudity provision of Ind. Code § 35–45–5–1 was overbroad and thus unconstitutional. This appeal followed.

For convenience and to avoid unnecessary cost and delay, all of these appeals are consolidated here for opinion pursuant to Ind.R.Ap.P. 5(B). All involve the same con-

duct, nude dancing or appearances in bars. All involve the action of trial courts declaring Ind.Code § 35–45–4–1 to be unconstitutional. The statute in issue, Ind.Code § 35–45–4–1 (Burns 1978) reads as follows:

35–45–4–1. Public indecency.—(a) A person who knowingly or intentionally, in a public place:

(1) Engages in sexual intercourse;

(2) Engages in deviate sexual conduct;

(3) Appears in a state of nudity; or

(4) Fondles the genitals of himself or another person; commits public indecency, a class A misdemeanor.

(b) "Nudity" means the showing of the human male or female genitals, pubic area, or buttocks with less than a fully opaque covering, the showing of the female breast with less than a fully opaque covering of any part of the nipple, or the showing of covered male genitals in a discernibly turgid state. [IC 35–45–4–1, as added by Acts 1976, P.L. 148, § 5, p. 718; 1977, P.L. 340, § 76, p. 1533.]

In considering the issue of the constitutionality of a statute.

"We recognize that the Legislature is vested with a wide latitude of discretion in determining public policy. Therefore, every statute stands before us clothed with the presumption of constitutionality and such presumption continues until clearly overcome by a showing to the contrary. In the deliberative process, the burden is upon the challenger to overcome such presumption, and all doubts are resolved against his charge."

*Sidle v. Majors*, (1976) 264 Ind. 206, 341 N.E.2d 763, 766.

## I.

The State alleges error in the lower courts finding that the statute was vague and claims error in that the lower courts failed in their duty to give the statute a reasonable interpretation. Appellees contend that because the term "public place" was undefined in the statute, the statute is unconstitutionally vague. The question involved in such an inquiry is whether a challenged law is so vague that "men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). As the State has pointed out, the conduct involved here, i. e., nude dancing and appearances in taverns and bars, is clearly conduct in a "public place."

In Indiana, the definition of public indecency and public place has been considered and was early limited by the Court itself. In *McJunkins and Others v. State*, (1858) 10 Ind. 140, 145, involving a determination that certain improprieties of language were not intended to be included as a punishable offense under a charge of public indecency, the Court noted that:

"It would therefore appear that the term public *indecency* has no fixed legal meaning—is vague and indefinite, and cannot in itself imply a definite offense. And hence, the Courts, by a kind of judicial legislation, in England and the United States, have usually limited the operation of the term to public displays of the naked person, the publication, sale, or exhibition of obscene books and prints, or the exhibition of a monster—acts which have a direct bearing on public morals, and affect the body of society."

In *Ardery v. State*, (1877) 56 Ind. 328, the Supreme Court faced the issue of whether or not the offense of public indecency, not being defined by statute, was punishable.

"The enquiry, therefore, arises for this court to answer is the exposure, in a public place, to divers persons there assembled, by a person, of his or her private parts, a public indecency? *Prima facie*, we think it is, if there is in the world any such thing as public indecency."

In commenting that there had existed such a thing as decency and such a thing as indecency since the time of Adam and Eve, the court affirmed the judgment even though "decency" forbade that the parts exposed be named in the statute.

During the intervening years, many standards have changed and statutes have been

drawn more specifically and explicitly. Nevertheless, it appears that the basis for the offense of public indecency remain the same. The word public was further defined in *Peachey v. Boswell*, (1960) 240 Ind. 604, 167 N.E.2d 48, 56–57, in discussing the phrase, "In any place accessible to the public" with reference to a gambling statute. We stated as follows:

"Webster defines 'public' as 'open to common and general use, participation, or enjoyment' of the public. It has been held that the term 'public place' as used in statutes pertaining to gambling includes any place which for the time being is made public by the assemblage of people who go there with or without invitation and without restraint. *Roberts v. State*, 1908, 4 Ga.App. 207, 60 S.E. 1082, 1085.

"A place may be accessible to the public for gambling notwithstanding that every person who desires is not permitted access thereto. *Lockhart v. State*, 1853, 10 Tex. 275, 276.

"It has also been held that in a case involving a prohibition law that by 'public' is meant that the public is invited to come to the place and has access to it for the purpose within the scope of the business there maintained. *Brooks v. State*, 1916, 19 Ga.App. 3, 90 S.E. 989, 991.

" 'Accessible to the public' as used in the Act here in question has not been defined by either of the courts of appeal of this State, nor have we been able to find definition by the courts in other jurisdictions.

"From a consideration of the terms 'accessible', 'public', and 'public place', as defined hereinabove, together with the purpose of the Act, we have concluded that the phrase 'in any place accessible to the public' as used in § 10–2330, supra, means any place where the public is invited and are free to go upon special or implied invitation—a place available to all or a certain segment of the public."

We find no merit in the contention that the statute is vague because the word public is undefined.

## II.

Appellants claim error in the trial court's finding that the statute is defective because of overbreadth, that is, that even if the meaning of the statute is clear, and, even though a nude dancer would know that her public nudity is a prohibited activity, the statute is unconstitutional if it sweeps too broad and regulates activities which cannot constitutionally be regulated. Consideration of this issue involves several claims. One is that because the appellees make their claim as a First Amendment claim, they may raise the rights of others, although there is no question that their conduct properly falls within the statute. This assertion of overbreadth depends initially upon a determination that the rights asserted are properly First Amendment rights and that therefore, they are entitled to consideration under the overbreadth doctrine.

This argument must have as its base that the activity involved here, appearing nude in bars and taverns and nude dancing in bars, is entitled to First Amendment protection. Appellees additionally argue that a statute directed at public nudity which does not limit its prohibition to certain sexual activity combined with nudity, or one which prohibits all "public nudity" is unconstitutionally overbroad because some protected activity may be deterred. In other words, appellees argue that if there is any protected expression that could be included under a category of nudity in "public", this possibility would require our finding the public indecency statute to be overbroad. They claim that all prohibitions must be struck down unless somehow narrowed or tied to other regulations. They argue that if a statute could be read so as to prohibit not only topless and/or bottomless dancing in a tavern but also a production of the Ballet Africains at a public auditorium, then the statute is unconstitutionally overbroad. Appellees also include in this argument concerns that "public place" may also apply to restrooms, shower rooms, saunas, and locker rooms.

In support of this argument appellees quote at length from cases arising in New York which went to the United States Supreme Court. In 1973, the town of North Hempstead, New York enacted an ordinance prohibiting topless entertainment. Three bar owners challenged the ordinance on its face.

A temporary restraining order was refused. One owner continued to offer topless entertainment and was served with criminal process. The other two owners refrained. A temporary injunction was issued. The Federal district court refused to abstain pending the state criminal proceedings and held that the ordinance was overbroad. *Salem Inn, Inc. v. Frank*, 364 F.Supp. 478 (E.D.N.Y.1973). The Second Circuit Court of Appeals affirmed at 501 F.2d 18 (1974). The United States Supreme Court granted certiorari and affirmed the temporary injunction as to the two owners but reversed as to the other, holding that abstention was required. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). The court held that the district court did not abuse its discretion in finding that the ordinance was probably overbroad, thus justifying the injunction.

Appellees quote from the *Doran* opinion in support of their position as follows:

" 'The local ordinance here attacked not only prohibits topless dancing in bars but also prohibits any female from appearing in "any public place" with uncovered breasts. There is no limit to the interpretation of the term "any public place." It could include the theater, town halll,.opera house, as well as a public market· place, street or any place of assembly, indoors or outdoors. Thus, this ordinance would prohibit the performance of the "Ballet Africains" and a number of other works of unquestionable artistic and socially redeeming significance.' 364 F.Supp., at 483.

We have previously held that even though a statute or ordinance may be constitutionally applied to the activities of a particular defendant, that defendant may challenge it on the basis of overbreadth if it is so drawn as to sweep within its ambit protected speech or expression of other persons not before the Court. As we said in *Grayned v. City of Rockford*, 408 U.S. 104, 114, 92 S.Ct. 2294, 2302, 33 L.Ed.2d 222 (1972):

'Because overbroad laws, like vague ones, deter privileged activity, our cases firmly establish appellant's standing to raise an overbreadth challenge.' "

*Doran v. Salem Inn, Inc.*, (1975) 422 U.S. 922, 933, 95 S.Ct. 2561, 2568–69, 45 L.Ed.2d 648, 660. Appellees argue that this case requires the striking down of any "across the board" regulation of nudity.

The State, emphasizing the part of this opinion which refrains from stating a view on the merits argues that all *Doran, supra*, holds is that this form of entertainment, i. e., nude dancing, might be entitled to First and Fourteenth Amendment protection under some circumstances and that *Doran* is merely an interlocutory appeal and did not resolve the question of the constitutionality of the statute. The appellants also allege error in the trial court finding the statute overbroad, arguing that the activity involved is conduct, not speech, and that, therefore, challenge based on alleged facial invalidity is not available to appellees.

*California v. LaRue*, (1972) 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342, *reh. denied*, 410 U.S. 948, 93 S.Ct. 1351, 35 L.Ed.2d 615, held that in view of the State's broad authority to control the sale of intoxicating liquors under the Twenty-first Amendment, regulations proscribing some acts which were not obscene and possibly within the limits of the First and Fourteenth Amendments' protection of freedom of expression did not violate the Federal Constitution. The specific portion of *LaRue* upon which the court in *Doran* relied is as follows:

"The substance of the regulations struck down prohibits licensed bars or nightclubs from displaying, either in the form of movies or live entertainment, 'performances' that partake more of gross sexuality than of communication.

While we agree that at least some of the performances to which these regulations address themselves are within the limits of the constitutional protection of freedom of expression, the critical fact is that California has not forbidden these performances across the board. It has merely proscribed such performances in establishments that it licenses to sell liquor by the drink.

Viewed in this light, we conceive the State's authority in this area to be somewhat broader than did the District Court. This is not to say that all such conduct and performance are without the protection of the First and Fourteenth Amendments. But we would poorly serve both the interests for which the State may validly seek vindication and the interests protected by the First and Fourteenth Amendments were we to insist that the sort of bacchanalian revelries that the Department sought to prevent by these liquor regulations were the constitutional equivalent of a performance by a scantily clad ballet troupe in a theater."

409 U.S. 109, 118, 93 S.Ct. 390, 397, 34 L.Ed.2d 342, 352.

However, in *LaRue* the court also distinguished between written expression and public acts as follows:

"But as the mode of expression moves from the printed page to the commission of public acts that may themselves violate valid penal statutes, the scope of permissible state regulations significantly increases. States may sometimes proscribe expression that is directed to the accomplishment of an end that the State has declared to be illegal when such expression consists, in part, of 'conduct' or 'action' "

*Id.* at 117, 93 S.Ct. at 396, 34 L.Ed.2d at 351. We read *LaRue* to caution against attempting to censor dramatic performances in theaters or in movies, which may be protected expression. As noted in *Crownover v. Musick*, (1973) 9 Cal.3d 405, 107 Cal.Rptr. 681, 509 P.2d 497, *cert. den. sub nom., Owen v. Musick,* 415 U.S. 931, 94 S.Ct. 1443, 39 L.Ed.2d 489 (1974):

"A close reading of the *LaRue* opinion reveals that the only area of regulation involved in that case which the Supreme Court found 'within the limits of the constitutional protection of freedom of expression' was that of motion pictures and theatrical productions."

*See also Gabriel v. Town of Old Orchard Beach,* 390 A.2d 1065 (Me.1979); *People v. Karns,* 81 Misc.2d 186, 365 N.Y.S.2d 725 (Cty.Ct.Rochester, Monroe Co. 1975); *Kew v. Senter,* 416 F.Supp. 1101 (N.D.Tex.1976).

We recognize the existence of cases cited by the appellees to indicate that some courts have held that the regulation of nude dancing through public indecency statutes or ordinances, when such laws are not tied to the regulation of alcoholic beverages, may be unconstitutional. *See New York Topless Bar and Dancers Assoc. v. New York State Liquor Authority,* 91 Misc.2d 780, 398 N.Y.S.2d 637, 637 n. 2 (N.Y.Sup.Ct. 1977); *People v. Nixon,* 88 Misc.2d 913, 390 N.Y.S.2d 518 (Sup.Ct. 1976); *Lucifer's Gate, Inc. v. Town of Van Buren,* 88 Misc.2d 790, 373 N.Y.S.2d 304 (Sup.Ct. 1975). Other courts in other jurisdictions have held similar statutes to be overbroad, *Jamaica Inn, Inc. v. Daley,* 53 Ill.App.3d 257, 11 Ill.Dec. 38, 368 N.E.2d 589 (1977). Other courts have attempted to construe the term public place in public indecency laws to exclude places where persons willingly enter. *See Yauch v. State,* 109 Ariz. 576, 514 P.2d 709 (1973); *State v. Brooks,* 275 Or. 171, 550 P.2d 440 (1976).

It is obvious that this area is confused by the consideration of overlapping concepts of nudity, public indecency, and obscenity in differing contexts.

Appellees assert that even though the conduct involved here is nudity in public and clearly would fall within the prohibitions of the statute, the legislature is unable to prohibit such conduct unless the statute includes requirements of a showing that the nudity involved is obscene. Apparently this concept is traceable to cases primarily dealing with other areas and performances such as films, books, and theatrical performances. *See Erznoznik v. City of*

*Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (films); *Southeastern Promotions, Ltd. v. Conrad*, (1975) 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (prior restraint of stage production of *Hair*).

Cases involving such issues have continued to maintain certain distinctions between such concepts and to acknowledge that indecent public conduct is not included in the express exceptions allowed on the basis of the First Amendment. In the "Carnal Knowledge" film case, *Jenkins v. Georgia*, (1974) 418 U.S. 153, 161, 94 S.Ct. 2750, 2755, 41 L.Ed.2d 642, 650, nudity and obscenity were discussed, and it was stated that nudity alone was not enough to make material legally obscene citing *Miller v. California*, (1973) 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419. However, the *Miller* case itself noted that:

> "Although we are not presented here with the problem of regulating lewd public conduct itself, the States have greater power to regulate nonverbal, physical conduct than to suppress depictions or descriptions of the same behavior."

413 U.S. at 26, 93 S.Ct. at 2616, n. 8.

In *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975) a local ordinance was passed which prohibited the showing of films containing nudity by a drive-in theater when its screen was visible from a public street or place. The Supreme Court held the ordinance unconstitutional. However, the Court added in a footnote:

> "Scenes of nudity in a movie, like pictures of nude persons in a book, must be considered as a part of the whole work. . .
> In this respect such nudity is distinguishable from the kind of public nudity traditionally subject to indecent exposure laws. . . . ('No one would suggest that the First Amendment permits nudity in public places'). (citations omitted) *Id.* at 211, 95 S.Ct. at 2273, n. 7."

Thus it appears that certain public conduct which involves nudity may be regulated on a standard different from that provided for movies or books. Here we note the existence of Ind.Code § 35–30–10.1–1 et seq.

(Burns 1975) which may more properly be applied to such materials and performances and includes obscenity criteria. However, it appears obvious that as the content of the written material, motion picture, pictorial representation or live performance diminishes and we approach simply appearing nude in public, determining whether or not nudity is obscene becomes extremely difficult because the context is so limited. Therefore, the application of obscenity considerations to books, films and certain types of live musical or theatrical performances or productions seems more appropriate. In those settings, nudity, which may or may not be obscene, may be judged as are all other components of such materials or performances, in the context on which it is presented. There is sufficient content to enable courts to determine whether or not such nudity is obscene and therefore prohibited or whether, taken in its context, it is not obscene and requires protection as expression. However, the legislature is not required to provide for proof of obscenity before public nudity may be prohibited.

In appellees final and main contention they claim that this statute must fall because it could, in some other fact situations be used to suppress protected expression. These situations, it is alleged, could involve nudity within the context of a play, ballet, movie, book or other material. Thus, the argument goes that because of the potential for restriction of material or performances involving the communication of ideas, or speech, it is constitutionally required to tolerate or to allow some nudity in some contexts as part of some larger form of expression. Appellees argue that we must therefore conclude that we may not prohibit public nudity. We do not find this persuasive.

Consideration of their claim that the public indecency statute is overbroad requires a review of that basic doctrine. In *Broadrick v. Oklahoma*, (1973) 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830, the United States Supreme Court held that in general, constitutional rights are personal and the Court will consider only the allegations of

unconstitutionality in a particular fact situation which the plaintiff has brought to court. An exception to this general rule allows a challenge of alleged facial invalidity in the area of free speech. However, this exception is limited.

". . . But the plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protective speech to some unknown extent, there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe. (citation omitted). To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."

*Id.* at 615, 93 S.Ct. at 2917–18, 37 L.Ed.2d at 842.

Under our statutes and case law, public nudity itself, regardless of a showing of obscenity, and without requiring proof of obscenity, is conduct which traditionally has been held to be public indecency, which is within the power of the legislature to prohibit. There is no right to appear nude in public. Rather, it may be constitutionally required to tolerate or to allow some nudity as a part of some larger form of expression meriting protection, when the communication of ideas is involved. A critical part of the final issue to be decided relates to whether appearing nude or performing a

nude dance as presented in these cases is simply conduct or is expression entitled to First Amendment protection. In the cases before us it is clear the activity involved is appearing nude or dancing in the nude in bars and is conduct. Appellees make no claim that there is any pure speech involved in their appearances. They make no claim that the expression of any ideas is involved or inhibited because of the restriction on nudity in a public place. The injury claimed by the individual dancers and the owners and operators of the bars is that they lose money if unable to appear nude in public or to offer nude dancing in their establishments. They complain that they make less money appearing scantily clad than they make when they appear nude. This is a claim for some kind of right to appear nude in public and in this context, to appear nude in public for money. This activity is conduct, not speech, and as such, this claim does not rise to the level of a First Amendment claim. The governmental interest in prohibiting conduct that has long been recognized as public indecency is unrelated to the suppression of free speech. Our case law has restricted and defined the type of conduct which has been prosecuted under public indecency statutes. Our statutes provide for procedures and standards to be used in a determination of obscenity when required for different materials or performances. Under these facts the argument that Ind.Code § 35–45–4–1 (Burns 1978) is overbroad must fail. Certainly the presumption of constitutionality with which each statute is clothed is not clearly overcome. We reverse the judgments of the lower courts, order the injunctions issued to be lifted, and declare Ind.Code § 35–45–4–1 to be constitutional as a valid exercise of the police powers of the state.

GIVAN, C. J., and PRENTICE, J., concur.

HUNTER and DeBRULER, JJ., dissent with separate opinions.

DeBRULER, Justice, dissenting.

In my opinion the judgments of the trial courts below should be affirmed. In *State*

*v. Baysinger and others*, No. 1978 S 202, appellees were charged with appearing in the state of nudity by showing the female breasts and buttocks with less than a fully opaque covering of the nipples and buttocks at a night club, The Scorpion, in violation of Ind. Code § 35–45–4–1 (Burns 1978). Appellees filed a motion to dismiss and discharge contending that the statute was unconstitutional and the trial court sustained the motion. The judgments in the other two cases arose in different postures, but are to the same effect, i. e., that Ind. Code § 35–45–4–1 is unconstitutional on its face for reasons of overbreadth insofar as it proscribes public nudity in public places. That part of the statute dealing with public nudity applicable here provides:

"(a) A person who knowingly or intentionally, in a public place:

\*      \*      \*      \*      \*      \*

(3) Appears in a state of nudity;

\*      \*      \*      \*      \*      \*

commits public indecency, a class A misdemeanor.

(b) 'Nudity' means the showing of the human male or female  .  .  .  buttocks with less than a fully opaque covering, the showing of the female breast with less than a fully opaque covering of any part of the nipple  .  .  ..''

In *Grody v. State*, (1972) 257 Ind. 651, 278 N.E.2d 280, this Court invalidated a state criminal statute because of unconstitutional overbreadth and there described the doctrine as follows:

"A penal statute is unconstitutionally overbroad if its sanctions are applicable to activities that are protected by the First Amendment. *Coates v. Cincinnati* (1971), 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214  .  .  ..  The invalidity of such a statute rests on the fact that it constitutes a substantial deterrent to the free exercise of important First Amendment rights." 257 Ind. at 653, 278 N.E.2d at 281–282.

The issue presented here then is whether a person could be criminally liable under Ind. Code § 35–45–4–1, for engaging in conduct protected by the First Amendment. The crime defined by this statute occurs when a female person appears at any time, in any manner, in any public place, for any purpose, with naked breast. The statute is indifferent to verbal or other conduct in which the person may be engaged at the time or the presence and rights of others who may be in the same place at the same time. This statute would empower law enforcement officials to arrest and prosecute a nude woman dancer or actress in a professional stage production or a nude woman engaged in a public meeting the purpose of which is to educate about and encourage infant breast feeding or self-examination for breast cancer. It would permit the arrest and prosecution of models who may pose in the nude for art classes at our state universities. Activities of these sorts involving live performances, the dance, and educational activities are afforded the broadest First Amendment protection. *Schacht v. United States*, (1970) 398 U.S. 58, 90 S.Ct. 1555, 26 L.Ed.2d 44; *California v. LaRue*, (1972) 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342; *Doran v. Salem Inn, Inc.*, (1975) 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648. This statute is clearly unconstitutionally overbroad. Furthermore, the statute is so grossly overbroad that no court could construe it so as to render it free from this constitutional defect as to do so would require the court to exercise a legislative authority, a role we cannot assume. *Grody v. State, supra.*

HUNTER, Justice, dissenting.

I must dissent from the majority opinion in this case. I would ascribe greater weight than does the majority to the following language from Justice Rehnquist's opinion in *Doran v. Salem Inn, Inc.*, (1975) 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648.

"The District Court observed, we believe correctly:

" 'The local ordinance here attacked not only prohibits topless dancing in bars but also prohibits any female from appearing in "any public place" with uncovered breasts. There is no limit to

the interpretation of the term "any public place." It could include the theater, town hall, opera house, as well as a public market place, street or any place of assembly, indoors or outdoors. Thus, this ordinance would prohibit the performance of the "Ballet Africains" and a number of other works of unquestionable artistic and socially redeeming significance.' [*Salem Inn, Inc. v. Frank*, (E.D.N.Y.1973) 364 F.Supp. 478, 483.]

"We have previously held that even though a statute or ordinance may be constitutionally applied to the activities of a particular defendant, that defendant may challenge it on the basis of overbreadth if it is so drawn as to sweep within its ambit protected speech or expression of other persons not before the Court. As we said in *Grayned v. City of Rockford*, 408 U.S. 104, 114, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972):

"'Because overbroad laws, like vague ones, deter privileged activity, our cases firmly establish appellant's standing to raise an overbreadth challenge.'"

422 U.S. at 933, 95 S.Ct. 2568–9, 45 L.Ed.2d at 660.

The majority emphasizes that the Court held that nude dancing "might be entitled to First and Fourteenth Amendment protection under some circumstances." 422 U.S. at 932, 95 S.Ct. at 2568, 45 L.Ed.2d at 660. Yet, the only circumstance under which the United States Supreme Court has allowed a ban on nude dancing has been when a state has included the ban as part of its liquor license program. *California v. LaRue*, (1972) 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342. The purview of Indiana's public indecency statute is not limited to establishments where alcoholic beverages are served. The statute is couched in terms of nudity "in a public place." West's Ann. Ind. Code § 35–45–4–1 (1978).

I believe the quoted language from *Doran v. Salem Inn, Inc., supra,* stands for the proposition that a public indecency statute which prohibits nudity in any public place is unconstitutionally overbroad. See *Jamaica Inn, Inc. v. Daley,* (1977) 53 Ill.App.3d 257, 11 Ill.Dec. 38, 368 N.E.2d 589.

I would affirm the judgments of the trial courts below.