Carl R. Scacchetti, Jr., J.
Present before the court is an argument by the respective defense counsels for the various defendants in this case whether the local ordinance of the City of Rochester, New York, controlling nudity in public places, is valid and constitutional.
The specific ordinance under attack is cited as subdivision B of section 44-8 of the Municipal Code of the City of Rochester. It states as follows:
"Section 44-8. Indecent advertisements or acts.
"A person must not:
"B. Appear in a state of nudity, or in any indecent dress, or wilfully and lewdly expose the person, or the private parts thereof in a street or public place where others are present.”
Before the court indulges itself into the legal arguments proposed by the prosecution and defense counsels, a brief statement of the surrounding facts of the arrests herein will be given.
On the night of January • 3, 1975, the police vice squad entered various premises in the City of Rochester, New York, commonly referred to as "night clubs” and viewed 16 individual females performing before the patrons of those establishments. There is no controversy or argument posed that these females were not "paid performers” indulging in the normal activities of their trade. The viewing completed, each of these performers was arrested and charged with a violation of subdivision B of section 44-8 of the municipal code as cited above. Upon arraignment the following day, each was given *188 time to secure counsel, and upon the proper adjourned date, motions date was granted whereby the various defense counsels, both orally and by written briefs and legal memoranda, attacked the constitutionality and validity of the ordinance charged. Contra argument was posed by the prosecution and after final briefs were submitted to the court the cases were determined as finally submitted on the questions presented.
Since, as stated, there are multiple defendants in this case (16 in all) it is naturally assumed that representation by more than one attorney would give rise to different arguments and attack against the ordinance. A capsule summary statement of the arguments posed will be given, after which conclusions regarding same shall be drawn by the court. In substance, the points stated are as follows:
I. The ordinance is vague and ambiguous.
II. The ordinance is violative of the freedoms afforded under the First Amendment of the United States Constitution.
III. The passage of the enabling act portion of Section 245.01, New York State Penal Law in 1970 after the passage of local ordinance Section 44-8(B), Municipal Code, is ex post facto in nature and therefore unconstitutional.
IV. That the ordinance is unconstitutional in that it is violative of the rights of the Fourteenth Amendment of the Constitution of the United States by imposing stricter fines than those imposed by the initial act (Section 245.01, New York State Penal Law) under which it is founded.
V. That the ordinance is unconstitutional in that it deprives the defendants of property without due process of law, i.e., the right to earn a livelihood afforded under the Fourteenth Amendment of the Constitution of the United States.
VI. That the changing times and mores dictate that the court should interpret the law more loosely and declare the ordinance unconstitutional on that basis.
I. That The Ordinance Is Vague And Ambiguous.
It has long been held that any law which is vague, indefinite, uncertain or ambiguous on its face shall be deemed unconstitutional and violative of the rights afforded under the protective powers of the Fourteenth Amendment of the Constitution of the United States (People v Byron; 17 NY2d 64; *189 People v Hildebrandt; 308 NY 397; Connally v General Constr. Co., 269 US 385).
The attack on the local city ordinance regarding nudity is not so ambiguous or vague as to not fully apprise one of the law and forewarn against a course of conduct which could seemingly subject an individual to criminal liability for so engaging in that conduct.
As was pointed out by the court at the time of oral argument, its decision would be based on only so much of that ordinance as is felt deals with the instant defendants. In this regard the court reads the ordinance as stating:
"A person must not:
"B. Appear in a state of nudity * * * in a street or public place where others are present.” (Emphasis added.)
A "state of nudity” is readily definable and resort is had to subdivision 2 of section 235.20 of the New York State Penal Law, wherein it states: " 'Nudity’ means the showing of the human male or female genitals, pubic area or buttocks with less than a full opaque covering, or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple, or the depiction of covered male genitals in a discernibly turgid state.”
After a full reading of the definition it must be noted that the definition does not deal with the amount of items one may have on their bodies (such as shoes, neck chokers, gloves or stockings), but rather the items of the body which are exposed and readily recognized while appearing before other individuals. Not to be regarded as levity in this case, but a state of exposure discernible to the "naked” eye as defined by the Penal Law.
Regarding that portion of the ordinance which deals with "street” or "public place,” the court is quite sure that there can be no discernible argument of what is meant by those words. Clearly a "street” is defined as: "A public thoroughfare, usually paved, in a village, town or city, including the sidewalk or sidewalks.” (Webster’s Unabridged Dictionary.) And "public place” by definition under subdivision 1 of section 240.00 of the Penal Law as: " 'Public place’ means a place to which the public or a substantial group of persons has access, and includes, but is not limited to, highways, transportation facilities, schools, places of amusement, parks, playgrounds and hallways, lobbies and other portions of apartment houses *190 and hotels not constituting rooms or apartments designed for actual residence.” Restaurants, nightclubs, cocktail lounges and similar establishments, by virtue of their accessibility to the public fall within the scope of that definition stated, so much as it applies to the locale where the individual defendants were arrested.
The only conclusion which can readily be drawn from an analysis of that portion of the ordinance which pertains to these defendants is that no ambiguity or vagueness appears therein which would not fully make aware a reasonable person the content and extent of the law by which they are to be governed. Any other conclusion would be arbitrary and capricious which automatically would solidify the constitutionality of the ordinance since ambiguities of any law are to be sustained in favor of constitutionality not against it (Roth v United States, 354 US 476).
In the Roth case (supra, p 491), the court stated: "This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. * * * [T]he Constitution does not require impossible standards’; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices * * *(Citing United States v Petrillo, 332 US 1.)
In answer to the first objection raised therefore, the court rules that the ordinance as proposed and as it applies to the named defendants is not a violation of the constitutional rights of those persons based on ambiguity, evasiveness, or vagueness.
II. THAT THE ORDINANCE IS VIOLATIVE OF THE FREEDOMS AFFORDED UNDER THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION.
There is a contention proposed by the defense attorneys in this matter that the activities indulged in by the defendants— dancing in the nude — is protected by the rights afforded under the First Amendment of the Constitution of the United States. That right, as stated, is the right of free expression, which dancing allegedly has been determined to be. The case cited for this argument is Salem Inn v Frank (364 F Supp 478, affd 501 F2d 18).
In the Salem Inn case, the court stated as follows (364 F *191 Supp 478, 483, supra): "it appears clear that dancing is a form of expression protected by the First Amendment.”
The court (on appeal to the Circuit Court of Appeals — 2nd Circuit) stated (501 F2d 18, 20, supra): "Dancing is a form of expression protected by the First Amendment. Even nude dancing in a bar can be within the constitutional protection of free expression.” (Emphasis added.)
The case relates, as do counsel for the defendants, that the broad sweeping powers of the ordinance would prohibit artistically acclaimed performances such as "Ballet Africains” and the production of "Hair” from being performed because of the nude performers involved therein. It would seem that these arguments proposed by the court will retain little if any validity when coupled with the pronouncements contained in the Roth v United States case cited previously. In the Roth case (supra), the court went into the historical aspect of the First Amendment and the ratification by the sovereign States, and stated that despite the ratification, the States contained to themselves certain rights of action which seemingly fell under the broad wording of that same Amendment and as evidence of this the court at page 483 states: "In light of this history, it is apparent that the unconditional phrasing of the First Amendment was not intended to protect every utterance.” (Emphasis added.)
What the court in Salem Inn (supra) has stated is that dancing, by judicial interpretation is a form of speech or communication, but has failed to adopt the more accepted rule that even certain forms of speech must give way to the greater good. In Roth v United States (supra, p 485), it is stated (citing Chaplinsky v New Hampshire, 315 US 568, 571, 572): " 'There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene * * * It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any beneñt that may be derived from them is clearly outweighed by the social interest in order and morality * * (Emphasis added.)”
Clearly, dancing of a certain type as opposed to another, is not one of judicial interpretation and more easily reconciled with personal indications or belief. No doubt some individuals of different social standing may regard the productions Hair *192 or Ballet Africain to be highly offensive and obscene, while others of the same strata may not. Albeit, it clearly comes under the heading of personal taste. It would seem that by interpretation, the courts in Salem Inn (supra) have adopted an attitude of judging all dancing as a legal form of communication, which this court is quite sure was not the intent. By the wildest stretch of one’s imagination it is hardly conceivable that our forefathers (the framers of the Constitution) or our Supreme Court of the United States, by judicial interpretation, have as yet formulated dancing in the nude to be a form of expression.
Since the court in Salem Inn (supra) was silent as to the States’ rights regarding regulation, it is only fair to point out that those regulatory powers afforded to the separate States were determined inviolate under the Ninth and Tenth Amendments to the Constitution, so long as it did not clearly violate the rights afforded under the other Amendments (here First and Fourteenth).
We must be mindful that even the Federal courts have at times pronounced limitation on the States and their courts and were later found to be in error as evidenced by the case of Heller v New York (413 US 483).
In the Heller case (supra) the Federal courts attempted to restrict the police powers of the State as being violative of the rights afforded under the Fourteenth Amendment. However, by judicial interpretation of the Supreme Court (Heller v New York) it was shown that the States had acted properly and well within their regulatory powers afforded under the Constitution.
Nude dancing has been adjudged by the Supreme Court to be a proper subject of police power of the State, and as stated in the case of California v LaRue (409 US 109, 121) the court pronounced (Justice Douglas’ dissent): "The line which the Court draws between 'expression’ and 'conduct’ is generally accurate; and it also accurately describes in general the reach of the police power of a state when 'expression’ and 'conduct’ are closely brigaded.”
Further, the protective rights of the First and Fourteenth Amendments when outside the scope of actual spoken or written words, are more amenable to State regulatory powers, as evidenced by the court in California v LaRue (supra, p 117): "But as the mode of expression moves from the printed page *193 to the commission of public acts that may themselves violate valid penal statutes, the scope of permissible state regulations significantly increases. States may sometimes proscribe expression that is directed to the accomplishment of an end that the State has declared to be illegal when such expression consists, in part, of 'conduct’ or 'action,’ Hughes v Superior Court, 339 US 460 (1950); Giboney v Empire Storage Co., 336 US 490 (1949). In O’Brien, supra, the Court suggested that the extent to which 'conduct’ was protected by the First Amendment depended on the presence of a 'communicative element,’ and stated: 'We cannot accept the view that an apparently limitless variety of conduct can be labeled "speech” whenever the person engaging in the conduct intends thereby to express an idea.’ 391 US, at 376.”
What is attempted here by the lower Federal courts is an attempt to include nude dancing as a matter of right in the prior decisions dealing with First Amendment rights. It would seem a contra attitude is held by the Supreme Court of the United States. Even the litigants in the La Rue case (supra) expressed some belief that nudity was not to enjoy such a sanction as stated in the Salem Inn case (supra). Regard footnote 2 on page 112 of the LaRue case, wherein it was stated: "At oral argument in that court they withdrew their objections to these rules, conceding 'that topless waitresses are not within the protection of the First Amendment’ ”.
The sum total of the Salem Inn case (supra) at best can be determined as a case elongating freedom of speech to include dancing, but hardly can it be determined to mean that "nudity” coupled with dancing is such a protected right. All forms of speech and the content therein (here dancing as a form of expression or speech) were never intended by the framers of the Constitution or our Supreme Court of the United States as a protected right in deference to the greater good necessary to protect society. This proposition is firmly stated in the case of Paris Adult Theatre I v Slaton, 413 US 49, 57-58) wherein the court stated: "In particular, we hold that there are legitimate state interests at stake in stemming the tide of commercialized obscenity, even assuming it is feasible to enforce effective safeguards against exposure to juveniles and to the passersby. Rights and interests 'other than those of the advocates involved.’ Breard v Alexandria, 341 US 622, 642 (1950). These interests of the public in the equality of life and the total community environment, the tone of the commerce in the *194 great city centers, and, possibly, the public safety itself.” (Emphasis added.)
In summary on this contention this court is of the opinion that the restrictions imposed by subdivision B of section 44-8 of the local ordinance are constitutionally protected regulatory power of the City of Rochester, New York, encompassed under the enabling act of section 245.01 of the Penal Law. One must bear in mind that the Salem Inn case (supra) deals merely with nude dancing in an inn or tavern, while the ordinance of the City of Rochester deals with nudity in a public place. If the question of nudity in a public place were dealt with more pointedly by the courts in the Salem Inn case, one could only assume that a different opinion would have been forthcoming.
III. That the Portion of the Penal Law, Section 245.01, New York State Penal Law Attempting to Validate an Already Existing Ordinance is Ex-Post Facto in Nature and Therefore Unconstitutional.
As regards this argument, it merely must be stated that all laws, on their face, when passed by the proper legislative powers, bear a mark of constitutionality (Bookcase v Broderick, 49 Misc 2d 355, affd 18 NY2d 71, app dsmd sub nom Bookcase v Leary, 385 US 12; Bohling v Corsi, 204 Misc 778, affd 306 NY 815; Matter of Roosevelt Raceway v Monaghan, 9 NY2d 293).
That prima facie constitutionality continues to exist until such time as it is attacked and overruled by the proper tribunals) (People v Conte, 64 Misc 2d 573). Since the ordinance now before the court was never attacked prior to the passage of the enabling act of 1970, even though the ordinance became local law in 1964, the former gave birth to validity of the latter. Such has not always been the case regarding these types of ordinances as evidenced by the case of People v Conte (supra). In the Conte case, an attempt was made to enforce a local law prohibiting topless waitresses from performing in a nightclub. The court struck down the ordinance stating (p 575) it was contra to the State law which specifically excluded nudity in a "play, exhibition, show or entertainment.” Thereafter, in 1970 the amendment was passed giving local municipalities the right to adopt a stricter law and to exclude the shows, entertainment and exhibitions from the protective aspect of the State law.
*195 As stated, the later enabling act of 1970 ratified the local law and did not require a repassage of it.
IV. That the Local Law Violates the Fourteenth Amendment Rights of the Constitution by Imposing Stricter Fines than those under the Initial Act of the State (Penal Law, § 245.01).
It has been held by the laws of the State of New York that fines imposed by local ordinance may be fixed by the municipalities that set them. This is dictated even though such fines may exceed the amount set forth by the similar State law as here violation compared to violation.
For a controlling point on this proposition one need only refer to subdivision 4 of section 80.05 of the Penal Law, which states:
"4. Violation. A sentence to pay a fine for a violation shall be a sentence to pay an amount, fixed by the court, not exceeding two hundred fifty dollars.
"In the case of a violation defined outside this chapter, if the amount of the fine is expressly specified in the law or ordinance that defines the offense, the amount of the fine shall be fixed in accordance with that law or ordinance.”
It would seem that the mere wording of the section answers the question proposed by the defense counsels.
V. That the Ordinance is Unconstitutional in that it Deprives the Defendants of Property Without Due Process of Law, I.E., The Right to Earn a Livelihood Afforded Under the Fourteenth Amendment to the Constitution of the United States.
Surely, none of the defense counsels in this case are contending that all rights of livelihood are protected under the Constitution of the United States. More properly stated, all rights to a legal livelihood are protected. The term legal must be interjected so as to engage in a discourse regarding the point set forth by defense counsels. One can well imagine a multitude of occupations which are not considered legal in nature and therefore no such protection is affordable.
Nonetheless, if one assumes that nude dancing or appearing nude in a public place is a form of livelihood, then the statements made by this court previously are such that no such protection is intended.
*196 Is the exercise by the local legislature by passing subdivision B of section 44-8 a proper police power to regulate the occupation chosen by the defendants? This court answers affirmatively and cites the case of Good Humor Corp. v City of New York (290 NY 312), as controlling, at least as far as the enabling portion of section 245.01 of the Penal Law. The court related on page 317: "Local laws are valid which have a substantial relation to matters within the field where legislative power is vested in the local legislative body of the city by the Constitution and statutes of New York. They must be reasonably calculated to achieve a legitimate purpose.”
The legitimate purpose of the local ordinance is clearly one of preventing either the suspecting or unsuspecting public from being confronted with nude persons. Surely the city fathers considered that an appearance in a public place or street by a nude person would not be sanctioned by the local community. Rather, it would fall under the heading of violative behavior.
The argument posed that "times are changing” and therefore one should adopt a more lenient and permissive attitude toward nude appearances can only fall on deaf ears when considered in the light of the case of Paris Adult Theatre I v Slaton (413 US 49, supra).
The court relates how if the public clamor is one of permissiveness and a desire for change in the law to permit certain behavior or conduct not heretofore allowable, then the sovereign States and their various municipalities may, by legislation, change the restrictions and adopt a more liberal attitude. At page 64 the court relates: "The States, of course, may follow a Taissez faire’ policy and drop all controls on commercialized obscenity, if that is what they prefer, just as they can ignore consumer protection in the marketplace, but nothing in the Constitution compels the States to do so with regard to matters falling within state jurisdiction. See United States v Reidel, 402 US at 357; Memoirs v Massachusetts, 383 US, at 462 (White, J. dissenting). 'We do not sit as a super-legislature to determine the wisdom, need and propriety of laws that touch economic problems, business affairs, or social conditions.’ Griswold v Connecticut, 381 US 479, 482 (1965). See Ferguson v Skrupa, 372 US, at 731; Day-Brite Lighting, Inc. v Missouri, 342 US 421, 423 (1952).”
The notion that defendants’ occupation is their form of livelihood in no way gives rise to an equal presumption that *197 ergo it must be legal. Is it contended by counsels that these defendants, while draped in some costume, could not perform as well or as efficiently. Or, more logically, is it the lack of clothes which lends to their efficiency and ability. It matters not when considered that in the latter instance, i.e., lack of clothing, their employment is secured and their dancing prowess only termed secondary and therefore not fully required for their occupation.
It is sufficient to state that by its regulatory powers endowed by the State Legislature, the City of Rochester may restrict the occupational activities of the defendants herein named in the same way and manner that it restricts other illegal activity such as housing code violation, gambling, marching without a permit, etc.
Nude dancing must be considered, at least by this court, to be a form of illegal activity not protected by the rights of the Fourteenth Amendment. It would seem fairly clear that in the instant cases we are not dealing so much with nude dancing as a form of expression, but rather with a selling technique so as to induce attendance of an audience which is prevailed upon more through prurient interest than artistic endeavor. Legislation to protect against such an occurrence has been upheld by the Supreme Court where as in the case of Paris Adult Theatre I v Slaton (413 US 49, 63, supra) the court pointed out: "The sum of experience, including that of the past two decades, affords an ample basis for legislatures to conclude that a sensitive, key relationship of human existence, central to family life, community welfare, and the development of human personality, can be debased and distorted by crass commercial exploitation of sex. Nothing in the Constitution prohibits a State from reaching such a conclusion and acting on it legislatively simply because there is no conclusive evidence or empirical data.”
VI. That the Changing Times and Mores Dictate that the Court Should Interpret the Law More Loosely and Declare the Ordinance Unconstitutional on That Basis.
A final point that the court would consider, although already inured to, is that in these changing times and attitudes the courts should interpret the law differently than it would have had this case been presented 20 or 30 years ago.
Courts are not Legislatures and have no rights to assume *198 that position (Griswold v Connecticut, 381 US 479, 482; Ferguson v Skrupa, 372 US 726, 731; Day-Brite Light. v Missouri, 342 US 421). Occasionally, by judicial interpretation, the law is more clearly defined or necessitates passage of legislation. However, courts will not legislate and it is not their function to do so. To require a court to interpret laws in the light of changing times lends itself to legislating from the bench which this court is not prone to do. If, as counsels for the defendants maintain, the law should be changed, then the proper forum in this case would be the City Council of the City of Rochester, and it is suggested they go before that body for the relief thus requested of the court.
The other argument proposed by counsels is that no one forces persons to attend these nightclubs where the defendants perform. Before attacking this argument, let it also be said that because of the presence of the defendants other segments of society are denied the right to attend the places wherein they perform because these persons, while desiring to frequent the establishment, may not have an equal desire and may perhaps even have a revulsion to the performances so stated. Is this not a denial of rights afforded to the public at large which public places must furnish. Are their rights not equally important?
The mere fact that a person of his own "free will” enters a premise knowing what activity transpires therein is of little consequence either. It is the "activity” one is concerned with, not his "free will” to relate to it. If "free will” were all there was to it, then how could one argue against the illegality of houses of prostitution, gambling dens or opium dens. Surely no valid argument could be posed that since a multitude of persons partakes in these activities of their own "free will”, then they must be considered in the guise of "times are changing” to be considered valid and legal occurrences within the premises where the activity occurs, and all those so indulging as being about their constitutional rights to a livelihood. This could hardly be a valid contention.
The question of "free will” and its relation to the law is clearly stated in Paris Adult Theatre I v Slaton (413 US 49, 63-64, supra): "It is argued that individual 'free will’ must govern, even in activities beyond the protection of the First Amendment and other constitutional guarantees of privacy, and that government cannot legitimately impede an individual’s desire to see or acquire obscene plays, movies, and books. *199 We do indeed base our society on certain assumptions that people have the capacity for free choice. Most exercises of individual free choice — those in politics, religion, and expression of ideas — are explicitly protected by the Constitution. Totally unlimited play for free will, however, is not allowed in our or any other society. We have just noted, for example, that neither the First Amendment nor 'free will’ precludes States from having 'blue sky’ laws to regulate what sellers of securities may write or publish about their wares. See supra, at 61-62. Such laws are to protect the weak, the uninformed, the unsuspecting, and the gullible from the exercise of their own volition. Nor do modern societies leave disposal of garbage and sewage up to the individual 'free will,’ but impose regulation to protect both public health and the appearance of public places. States are told by some that they must await a 'laissez faire’ market solution to the obscenity-pornography problem, paradoxically 'by the people who have never otherwise had a kind word to say for laissez faire,’ particularly in solving urban, commercial, and environmental pollution problems. See I. Kristol, On the Democratic Idea in America 37 (1972).”
The defendants in this case have attacked the constitutionality of subdivision B of section 44-8 of the Municipal Ordinance on the various grounds stated in this decision. Hopefully each and every question proposed by the various defense counsels has been responded to.
The question of unconstitutionality, once raised, must be proven by the defendant beyond a reasonable doubt. As was stated in People v Gilbert (72 Misc 2d 795, 798): "There is a strong presumption by the law that a statute (here an ordinance) duly enacted by the legislature (City Council) is constitutional. Indeed, in order to declare a law unconstitutional, the invalidity of the law must be demonstrated beyond a reasonable doubt (Matter of Van Berkel v Power, 16 NY2d 27, 40; People v Pagnotta, 25 NY2d 333). * * * However, a court of first impression should not set aside a statute as unconstitutional unless that conclusion is inescapable (Bohling v Corsi, 204 Misc 778, affd 306 NY 815; McKinney’s Cons Laws of New York, Book 1, Statutes, § 150). * * * Any ambiguities in the language of a statute are to be resolved so as to sustain its constitutionality, if such construction can be fairly held to have been within the contemplation of the legislature.” (Roth v United States, 354 US 476.)
*200 In view of all the positions stated by this court, and the cases cited herein, the court is of the opinion that the defendants have failed to maintain the burden of proof necessary to overcome the constitutionality of subdivision B of section 44-8 of the local ordinance. The ordinance therefore is deemed constitutional and having full force and effect.