OPINION OF THE COURT
William D. Friedmann, J.
Dismissal of an indictment, charging various drug related offenses against 10 defendants, is sought on grounds that the Grand Jury should have been instructed that the "Social Club” premises wherein a search warrant was executed, narcotics seized and defendants arrested was a "Public Place”. Such instruction, it is contended, would have negated the rebuttable presumption of knowing possession of narcotics *1101 (under certain circumstances) in a nonpublic room, as that term is incorporated in Penal Law §220.25 (2). The precise relevant language of that statute states "The presence of a narcotic drug * * * in open view in a room, other than a public place * * * is presumptive evidence of knowing possession thereof by each and every person in close proximity”. No statutory definition of "Public Place” is found in that section or in the entire Penal Law article 220, which deals with controlled substance offenses (§§ 220.00-220.60).
SUBJECT OF INQUIRY
Inquiry is directed at reaching a meaning of a "public place” as that term appears in the context of Penal Law § 220.25 (2). Second inquiry being whether the particular "Social Club” premises in question, where the narcotics were seized and arrests made, fits into such definition.
WHAT IS A PUBLIC PLACE?
It would appear that "public place” would lend itself to two different and distinct definitions. The narrower of the two would encompass solely government and/or community owned premises. Consideration of the apparent legislative objectives of section 220.25 (2) and other New York State and other States’ statutory approaches to regulating offenses against the public order, use of obscene language, drinking and sexual acts, in public places, would clearly negate such a narrow construction (see, Location of Offense as "Public” With Requirements of Enactments Against Drunkedness, Ann., 8 ALR3d 930; Sexual Acts — Prohibition in "Public Place”, Ann., 96 ALR3d 692; Validity and Construction of Statute or Ordinance Prohibiting Use of "Obscene” Language in Public, Ann., 2 ALR4th 1331; Validity and Construction of Statute or Ordinance Making It Offense to Have Possession of Open or Unsealed Alcoholic Beverage in Public Place, Ann., 39 ALR4th 668).
It seems to this court that a second and broader construction would more accurately approach the legislative objectives of Penal Law § 220.25 (2) by eliminating, from the rebuttable presumption of knowing possession, places where it would be less likely that those present would be involved in a drug operation.
Even though there is no cross reference between the statutes, the definition of the term "public place” in Penal Law *1102 § 240.00 (1) (offenses against public order) as, " 'Public Place’ means a place to which the public or a substantial group of persons has access” and that statute then lists various examples of places which constitute public places (social club not being specifically mentioned), seems like a more realistic commonsense test to be applied in determining whether a particular place, at a particular time, is a public place or a private place within the meaning of Penal Law § 220.25 (2).
Adoption of the broader construction requires a closer look at the meaning of the key words "the public” or a "substantial group of persons” and "access”:
(1) A definition of "the public” or a "substantial group of persons” seems to mean people in general or people at large, that is not restricted or confined to a few persons by use or selection. Any good definition of these words would include, in some fashion or manner, the idea that the place in question must be common to all or many and generally open to the common use.
Any reference to descriptive language or label or name of a place such as "club”, "association”, "group”, etc., seems to have little or no value — as, for example, compare the use of the word "club” in "Christmas Club”, "Night Club”, "Bridge Club” or "Golf Club”, etc. From such comparison, it can be readily seen that any such reference would be meaningless— one use of "club” deceptive or misleading, while the others relate to both private and/or public places. Therefore, any "use” analysis would lead to the conclusion that a definition of "public” or a "substantial group of persons” requires factual inquiry as to use, i.e., who was present at or who uses a particular premises at a particular time. Such determination seemingly would not be destroyed if "the public” or "substantial group of persons” were objectively confined in its use of a place by reasonable selections such as by age, sex and/or other justifiable characteristics, for example, as might result in an "Adult Night Club”, a "Social Club”, or admission to a movie theatre by certain persons at certain time, "Persons Under 12 Admitted Only With Adult Supervision”.
(2) The English language definition of "access” has not varied much in the last 231 years. Compare, Samuel Johnson’s definition "The way by which anything may be approached” (A Dictionary of the English Language [1755]) with "The right to enter or make use of’ (Roget’s II — The New Thesaurus [1983]).
*1103 Access analysis would therefore also seem to require factual determination as to whether the right-of-way, the right to enter or the right to use a particular place is or was, at the time in question, limited, proscribed, confined, restricted or obstructed (such consideration of an "open door policy” or a "restricted door policy”, illustrated by moat and drawbridge concepts, up to the modern use of sophisticated electronic screening devices). The following limitations, among others, upon access, seem of relevant consideration — locked doors, peephole clearance, one-way mirrors, buzzer systems, T.V. cameras, key and/or credit card entry devices, as well as any realistic membership screening or clearance procedures and the existence or nonexistence of public licensing such as those surrounding liquor, cabaret permissions, etc.
CONCLUSIONS
The above definitions, as applied to the testimony of Police Officer William Peters regarding observations of the storefront "Social Club” from the street, attempts to gain entry and observations of physical arrangements upon entry, in execution of the search warrant, leads this court to the inescapable conclusion that this "Social Club” premises cannot be considered a public place. Entry was not open to the general public at large or even to a "substantial group of persons”. Rather, the social club premises in question, with its outer and inner doors, physical arrangement and screening devices, was designed so as to confine entry and restrict use to those selected and/or screened, that is members of the club or other persons passing subjective muster by those operating the club from within.
This court’s "access” and "use probability” analysis distinguishes a social club from restaurants, nightclubs, cocktail lounges and other similar establishments which have been considered under Penal Law § 240.00 and other local statutes and ordinances as being public places (People v Karns, 81 Misc 2d 186 [1975]).
This court, therefore, finds that the social club premises in question according to the facts and circumstances involved, did not afford a reasonable probability that the public could gain access. It was, therefore, private and not public. Accordingly, that part of defendant Brian Breshnian’s motion is denied.