GLEN THEATRE, INC., an Indiana Corporation; Gayle Ann Marie Sutro; and Carla Johnson, Plaintiffs,

v.

CIVIL CITY OF SOUTH BEND; Charles Hurley, Chief of Police of the South Bend Police Department; Michael P. Barnes, Prosecutor of the County of St. Joseph, Indiana; and Linley Pearson, Attorney General of the State of Indiana, Defendants.

Darlene MILLER; and Jr.'s Kitty Kat Lounge, Inc., an Indiana Corporation, Plaintiffs,

v.

CIVIL CITY OF SOUTH BEND; Indiana Alcoholic Beverage Commission; Charles Hurley, Chief of Police of the South Bend Police Department; Michael P. Barnes, Prosecutor of the County of St. Joseph, Indiana; and Linley Pearson, Attorney General of the State of Indiana, Defendants.

Sandy DIAMOND; Lynn Jacobs; 720 Corporation, an Indiana Corporation, and 726 Corporation, an Indiana Corporation, Plaintiffs,

v.

CIVIL CITY OF SOUTH BEND; Charles Hurley, Chief of Police of the South Bend Police Department; Michael P. Barnes, Prosecutor of the County of St. Joseph, Indiana; Linley Pearson, Attorney General of the State of Indiana; and Indiana Alcoholic Beverage Commission, Defendants.

Civ. Nos. S 85–353, S 85–598 and S 85–722.

United States District Court, N.D. Indiana, South Bend Division.

Sept. 9, 1988.

Charles A. Asher, South Bend, Ind., Lee J. Klein, Durand, Mich., for Glen Theatre, Inc., et al.

Charles A. Asher, South Bend, Ind., for Darlene Miller, et al.

James F. Korpal, South Bend, Ind., for Sandy Diamond, et al.

Robert C. Rosenfeld, South Bend, Ind., William Daily, Chief Counsel, Indianapolis, Ind., for Civil City of South Bend, et al.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This case is before the court on remand from the Seventh Circuit Court of Appeals. In a Memorandum and Order signed by this Judge on July 26, 1985, defendants were preliminarily enjoined from arresting

or prosecuting or threatening to arrest or prosecute plaintiffs. On October 10, 1985, a permanent injunction was issued. The injunction was appealed and on September 30, 1986, the Seventh Circuit, speaking through Chief Judge Cummings, reversed this court's order and remanded the matter. *Glen Theatre, Inc. v. Pearson*, 802 F.2d 287 (7th Cir.1986). This court consolidated the *Glen Theatre* case with *Miller v. City of South Bend*, Cause Number S 85–598, and *Diamond v. City of South Bend*, Cause Number S 85–722. A hearing was held in open court on January 11, 1988. At that time this Judge set deadlines for filing briefs and proposed findings of fact and conclusions of law by all parties. Those briefs have since been filed and oral argument was heard on July 15, 1988, at which time this court took the matter under advisement. It is now prepared to render its decision in this case.

### I. Findings of Fact

This court adopts the findings of facts as set forth in its Memorandum and Order in the *Glen Theatre* action, which was dated July 26, 1985. The relevant portion of that Memorandum and Order is attached hereto as Appendix "A".

This court also adopts the statement of facts set forth by Judge Robert L. Miller, Jr. in his Memorandum and Order in the *Miller* case, Cause Number S 85–598, dated May 5, 1986. The relevant portion of that Memorandum and Order is attached hereto as Appendix "B".

Finally, this court adopts the fact findings as stated by Judge Miller in his Memorandum and Order in the *Diamond* case, Cause Number S 85–722, dated May 5, 1986. The relevant portion of that Memorandum and Order is attached hereto as Appendix "C".

### II. Conclusions of Law

The concept of the "law of the case" has specific application here. An inferior court must apply the decision of a superior appellate court. *United States of America v. City of Chicago*, 853 F.2d 572, 576 (7th Cir.1988). The decision of the Seventh Circuit Court of Appeals in this case has at least two salient features. First, it specifically cited with approval the decision of the Supreme Court of Indiana in *State of Indiana v. Baysinger*, 272 Ind. 236, 397 N.E.2d 580 (1979). Secondly, it reversed this court's decision which had been based on First Amendment considerations. The composite effect of the decision of the Court of Appeals in this case is to create narrow constraints for this court's present decisional process. The Seventh Circuit mandate, which was spelled out at the end of the opinion was instructive:

> The district court should examine the plaintiffs' proffered evidence of the dancing they wish to perform and decide, whether if considered as a whole, the activity should be afforded First Amendment protection.

In the preceding paragraph of the opinion, the court said:

> Plaintiffs are free to pursue their argument in district court that the nude dancing they wish to perform is expressive activity protected by the First Amendment and outside the reach of the public nudity statute as construed by *Baysinger*.

As this court understands these words, the type of dancing performed by these particular plaintiffs should be scrutinized by this Judge, who must then decide whether such activity is protected under the First Amendment. The plaintiffs in Cause Numbers S 85–722 and S 85–598 submitted a videotape as evidence of the type of dancing they wish to perform.[1] Plaintiffs in Cause Number S 85–353 apparently also incorporated that video tape as evidence of the dancing they wanted to perform. *See* "Supplemental Brief of Plaintiffs Darlene Miller and Jr.'s Kitty Kat Lounge, Inc." at page 3 ("The parties

---

1. The fact that some of the dancers wish to perform in establishments that serve alcohol is irrelevant here. The statute in question applies to public nudity and does not include any reference to establishments which serve alcoholic beverages. If that were the case, the Twenty-first Amendment of the Constitution of the United States would come into play.

have agreed to incorporate proof offered by them at the hearings of March 11, 1986 as part of the record of this case."). It should be noted at this point that plaintiffs' counsel conceded in open court on July 15, 1988, that the Glenn Theatre, formerly located at 500 West Chippewa Avenue, was very recently destroyed by fire. Therefore, the cause of action has become moot as to that plaintiff. *See, DeFunis v. Odegaard,* 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed. 2d 164 (1974).

■ This court has viewed the entire videotape which was entered into evidence. The tape consists of four separate performances. The performances are basically identical. They consist of a female, fully clothed initially, who dances to one or more songs as she proceeds to remove her clothing. Each dance ends with the dancer totally nude or nearly nude. The dances are done on a stage or on a bar and are not a part of any type of play or dramatic performance. They are simply what are commonly referred to as "striptease" acts. This court must determine whether such acts are protected by the First Amendment.

This court is writing on anything but a clean slate. Many courts in this state, and most other states, have addressed the subject of public nudity in a First Amendment context. Three basic premises are universally accepted. First, clearly all nudity is not obscene. *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 213, 95 S.Ct. 2268, 2274–2275, 45 L.Ed.2d 125 (1975). Second, nudity which is obscene is not protected. *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); *Roth v. United States,* 354 U.S. 476, 484–485, 77 S.Ct. 1304, 1308–1309, 1 L.Ed.2d 1498 (1957); *American Booksellers Ass'n, Inc. v. Hudnut,* 771 F.2d 323, 324 (7th Cir.1985).

Third, some forms of nude dancing are clearly protected. *Schad v. Mt. Ephraim,* 452 U.S. 61, 66, 101 S.Ct. 2176, 2181, 68 L.Ed.2d 671 (1981) ("nude dancing is not without its First Amendment protections from official regulations.")[2] Apart from those premises, however, the decisions throughout the country, although not always entirely clear, have been moving in the general direction of finding particular instances of nude dancing constitutionally protected. *See, e.g., International Food & Beverage Systems v. Fort Lauderdale,* 794 F.2d 1520, 1525 (11th Cir.1986) (Nude dancing constitutionally protected expression, at least if performed indoors before pay customers); *BSA, Inc. v. King County,* 804 F.2d 1104, 1107 (9th Cir.1986) (Barroom nude dancing can be expressive activity entitled to First Amendment protection and nudity alone is not sufficient to make that dancing legally obscene); *Birkenshaw v. Haley,* 409 F.Supp. 13, 18 (E.D.Mich.1974) (Not all forms of nude or semi-nude behavior are embodied with sufficient communicative content to warrant the protection of the First Amendment.). *See also,* Been, *Erhardt v. State: Nude Dancing Stripped of First Amendment Protection,* 19 Ind.L. Rev. 1 (1986), in which the author concludes that Indiana's Public Indecency Statute encroaches upon legitimate expression involving public nudity and cites this court's original opinion finding the statute unconstitutional overbroad as support for his contention that "professional dancers may seek protection for their communication in a federal forum where the law may be more sensitively applied and where first amendment rights may be zealously guarded." *Id.* at 15.

This court is required to apply Indiana law to the facts of this case. It is also

2. Schad did not explicitly find that non-obscene nude dancing was always constitutionally protected nor has any Supreme Court of the United States case directly confronted the question. In 1986, Justice White, in his dissent to *Young v. Arkansas,* 474 U.S. 1070, 106 S.Ct. 830, 832, 88 L.Ed.2d 801 (1986), in which the court denied certiorari, stated that he believed that it was time for the court to address the question due to the disagreement in the state courts over the reach of the First Amendment in this area. The Supreme Court of the United States has still not directly confronted this issue. It has simply acknowledged that nude dancing is entitled to some First Amendment protection. *Schad v. Mt. Ephriam,* 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981); *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972).

required to follow precedent set by the Seventh Circuit and to follow the "law of the case."[3] The law in Indiana was set forth clearly in two Supreme Court of Indiana cases, *State of Indiana v. Baysinger*, 397 N.E.2d 580 (Ind.1980) and *Erhardt v. State*, 468 N.E.2d 224 (Ind.1984). The *Erhardt* case involved the same statute with which this court is dealing, I.C. § 35–45–4–1. Ruth Erhardt entered a contest to be named "Miss Erotica of Fort Wayne" which was held at the Cinema Blue Theatre on February 25, 1982. The contest included a dance competition at which Erhardt danced to two songs. During the first, she wore a short negligee and panties. For the second number, she stripped down to nothing but a g-string and scotch tape criss-crossed over her nipples. She was arrested for public indecency. *Erhardt v. State*, 463 N.E.2d 1121, 1122 (Ind. App. 4 Dist.1984), *rev'd* 468 N.E.2d 224 (Ind.1984). The Indiana appellate court held that the dancing was protected by the First Amendment and that Erhardt could not be convicted of public indecency under IC § 35–45–4–1. The Supreme Court of Indiana reversed saying that the evidence brought Erhardt's conduct squarely within the prohibitions of the statute which was constitutional under *Baysinger*. In *Baysinger*, three cases were consolidated which all involved nude dancing or appearances in bars. The court found that the Indiana public indecency statute was constitutional in view of case law which restricted and defined the conduct to be prosecuted under the statute. *Baysinger*, 397 N.E.2d at 587. The statute, therefore, was not overbroad but was constitutional as a valid exercise of police powers of the state. *Id.* With regard to nude dancing, the court conceded that other jurisdictions had found similar statutes unconstitutional:

> We recognize the existence of cases cited by the appellees to indicate that some courts have held that the regulation of nude dancing through public inde-

cency statutes or ordinances, when such laws are not tied to the regulation of alcoholic beverages, may be unconstitutional. *See New York Topless Bar and Dancers Assoc. v. New York State Liquor Authority*, 91 Misc.2d 780, 398 N.Y.S.2d 637, 637 n. 2 (N.Y.Sup.Ct.1977); *People v. Nixon*, 88 Misc.2d 913, 390 N.Y.S.2d 518 (Sup.Ct.1976); *Lucifer's Gate, Inc. v. Town of Van Buren*, 83 Misc.2d 790, 373 N.Y.S.2d 304 (Sup.Ct. 1975). Other courts in other jurisdictions have held similar statutes to be overbroad, *Jamaica Inn, Inc. v. Daley*, 53 Ill.App.3d 257, 11 Ill.Dec. 38, 368 N.E.2d 589 (1977). Other courts have attempted to construe the term public place in public indecency laws to exclude places where persons willingly enter. *See Yauch v. State*, 109 Ariz. 576, 514 P.2d 709 (1973); *State v. Brooks*, 275 Or. 171, 550 P.2d 440 (1976). *Id.* at 585.

However, the Indiana Supreme Court decided otherwise:

> Under our statutes and case law, public nudity itself, regardless of a showing of obscenity, and without requiring proof of obscenity, is conduct which traditionally has been held to be public indecency, which is within the power of the legislature to prohibit. There is no right to appear nude in public. Rather, it may be constitutionally required to tolerate or to allow some nudity as a part of some larger form of expression meriting protection, when the communication of ideas is involved. A critical part of the final issue to be decided relates to whether appearing nude or performing a nude dance as presented in these cases is simply conduct or is expression entitled to First Amendment protection. In the cases before us it is clear the activity involved is appearing nude or dancing in the nude in bars and is conduct. Appellees make no claim that there is any pure

---

3. The "law of the case" may not technically apply here because the Seventh Circuit considered only the situation in the *Glen Theatre* action which this court has found to be moot due to the destruction of the Glen Theatre several months ago (*see infra*). However, while the court recognizes this technical distinction, it feels constrained to follow the Seventh Circuit's mandates in ruling on the remaining cases which were consolidated with *Glen Theatre* after that case was remanded to this court.

speech involved in their appearances. They make no claim that the expression of any ideas is involved or inhibited because of the restriction on nudity in a public place. The injury claimed by the individual dancers and the owners and operators of the bars is that they lose money if unable to appear nude in public or to offer nude dancing in their establishments. They complain that they make less money appearing scantily clad than they make when they appear nude. This is a claim for some kind of right to appear nude in public and in this context, to appear nude in public for money. This activity is conduct, not speech, and as such, this claim does not rise to the level of a First Amendment claim. The governmental interest in prohibiting conduct that has long been recognized as public indecency is unrelated to the suppression of free speech. Our case law has restricted and defined the type of conduct which has been prosecuted under public indecency statutes. Our statutes provide for procedures and standards to be used in a determination of obscenity when required for different materials or performances. Under these facts the argument that Ind.Code § 35-45-4-1 (Burns 1978) is overbroad must fail. Certainly the presumption of constitutionality with which each statute is clothed is not clearly overcome. We reverse the judgments of the lower courts, order the injunctions issued to be lifted, and declare Ind.Code § 35-45-4-1 to be constitutional as a valid exercise of the police powers of the state.

*Id.* at 587. The Seventh Circuit, in reversing this court's decision finding the Indiana statute unconstitutionally overbroad, pointed out that *Baysinger* and other Indiana case law sufficiently narrowed the reach of the statute to those instances of public nudity in which conduct, and not expression was involved.[4] There is nothing left for this court to decide but whether the nudity in question is expressive activity protected by the First Amendment.[5]

The *Baysinger* court looked at two major factors to determine whether the nudity was expressive activity. First, it considered the context of the dance presentation. The fact that the dancing was not part of a play or dramatic performance was deemed highly significant. *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed. 342 (1972) was distinguished:

> We read *LaRue* to caution against attempting to censor dramatic performances in theaters or in movies, which may be protected expression. As noted in *Crownover v. Musick*, (1973) 9 Cal.3d 405, 107 Cal.Rptr. 681, 509 P.2d 497, *cert. den. sub. nom., Owen v. Musick*, 415 U.S. 931, 94 S.Ct. 1443, 39 L.Ed.2d 489 (1974):

**4.** The Seventh Circuit pointed out that the *Baysinger* appeal had been summarily dismissed by the Supreme Court of the United States in *Clark v. Indiana and Lake County Prosecutor*, 446 U.S. 931, 100 S.Ct. 2146, 64 L.Ed.2d 783 (1980) and *Dove v. State*, 449 U.S. 806, 101 S.Ct. 52, 66 L.Ed.2d 10 (1980) for want of a substantial federal question. The court noted that the Supreme Court of the United States' summary dismissal is a ruling that the Indiana statute, as interpreted in *Baysinger,* is constitutional in the face of an overbreadth attack because a summary dismissal rejects only the specific challenges presented in the statement of jurisdiction filed with the Supreme Court of the United States and in *Baysinger,* those challenges raised the issue of overbreadth. Therefore, the Supreme Court of the United States rejected the overbreadth challenges. *Glen Theatre v. Pearson,* 802 F.2d 287, 288–289 (7th Cir.1986).

**5.** Whether the nude dancers perform in a "public place" as that term is used in the statute is not at issue here. There is no question, under Indiana law, that the businesses in question constitute public places. In *Baysinger,* the court reiterated its finding in *Peachy v. Boswell,* 240 Ind. 604, 167 N.E.2d 48 (1960), that a public place is "any place where the public is invited and are free to go upon special or implied invitation—a place available to all or a certain segment of the public." *Baysinger,* 397 N.E.2d at 583. Even a movie-viewing booth located in an adult bookstore which had a "glory hole" in one wall of the booth through which a defendant exposed his genitals was found to be a public place in *Thompson v. State,* 482 N.E.2d 1372 (Ind.App.1985). *See also, Adims v. State,* 461 N.E.2d 740 (Ind.App.1984), where the court found that private viewing booths with lockable doors with "in use" lights above the doors and which encircled a stage where nude dancers performed constituted a "public place."

"A close reading of the *LaRue* opinion reveals that the only area of regulation involved in that case which the Supreme Court found 'within the limits of the constitutional protection of freedom of expression' was that of motion pictures and theatrical productions."

See also *Gabriel v. Town of Old Orchard Beach*, 390 A.2d 1065 (Me.1979); *People v. Karns*, 81 Misc.2d 186, 365 N.Y.S.2d 725 (Cty.Ct.Rochester, Monroe Co. 1975); *Kew v. Senter*, 416 F.Supp. 1101 (N.D.Tex.1976).

*Baysinger*, 397 N.E.2d at 585.

The court also considered the fact that the dancers' claimed injury was economic in nature.[6] They complained that they made less money appearing scantily clad than they could make appearing nude. They did not claim that there was any pure speech involved in their appearances.

Unlike the *Baysinger* dancers, the dancers in this case have claimed that their First Amendment rights have been violated. They contend that their dancing is a form of expressive activity protected by the First Amendment. After viewing the proffered evidence, this court must conclude that in light of the Indiana Supreme Court decisions, the type of dancing these plaintiffs wish to perform is not expressive activity protected by the Constitution of the United States. These strip tease dances are not performed in any theatrical or dramatic context. Further, their conduct falls squarely within the prohibitions of Indiana's Public Indecency statute, which has been found constitutional.

This court cannot find any constitutionally protected expression in these performances, and must conclude that the dances are mere conduct. Judgment shall be entered in favor of the defendants. All costs assessed against the plaintiffs. IT IS SO ORDERED.

---

**6.** The *Baysinger* court did not consider whether the dances might be "commercial speech" which may be protected under the First Amendment. *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 68–69, 96 S.Ct. 2440, 2451–2452, 49 L.Ed.2d 310 (1976). That argument has not been raised in the case now before this court. Therefore, it will not be considered. Other courts, however, have found that nude dancing is not commercial speech. *See, e.g., BSA, Inc. v. King County*, 804 F.2d 1104, 1107 (1986).

## APPENDIX A

### I.

### FINDINGS OF FACT

Plaintiff Glen Theatre, Inc. is an Indiana corporation with its business located in Indiana. Its primary business is supplying so-called adult entertainment through written and printed materials, movie showings and live entertainment at a fully enclosed bookstore at 500 West Chippewa Avenue, South Bend, St. Joseph County, Indiana called the Chippewa Bookstore. The live entertainment at the Chippewa Bookstore consists of nude and semi-nude performances and showings of the female body through glass panels. The customers would sit in a booth and insert coins in a timing mechanism that permitted them to observe the live nude and semi-nude dancers for a period of time. This live entertainment is offered to fee-paying consenting adults over the age of 18 and no accidental viewing by any non-consenting person of the live nude and semi-nude entertainment is possible. No alcoholic beverages are sold, consumed or allowed on the Chippewa Bookstore premises. Glen Theatre, Inc. has offered and wishes to continue to offer to the interested adult public live nude and semi-nude showings.

In a period of about two years from March 1983 to March 1985, there were approximately eleven arrests of individuals at the Chippewa Bookstore for violations of I.C. § 35–45–4–1(a) for appearing in a state of nudity. All those who have been arrested have been prosecuted and at least five of those persons have been convicted of violating the Indiana public indecency statute and have unsuccessfully appealed their conviction to the Indiana Court of Appeals and Indiana Supreme Court. The latest arrests occurred on March 27, 1985 at which time two females were arrested by the South Bend Police Department and charged by the prosecuting attorney with

violating I.C. § 35-45-4-1. None of the plaintiffs in this case are the subject of criminal charges pertaining to the issues in this case.

As a result of the raids of March 27, 1985, the Chippewa Bookstore has discontinued the showing of any live nude entertainment. Glen Theatre, Inc. had scheduled Gayle Ann Marie Sutro (Sutro) to perform a nude dance production throughout the summer and fall of 1985 in conjunction with a South Bend area showing of one of her motion picture films at the Chippewa Drive-In. Sutro is a professional actress, stunt woman and ecdysiast and has studied acting, dancing, speech and language. She has danced, modeled and acted professionally for more than fifteen years and is a current member in good standing of the Screen Actors Guild, the Screen Extras Guild and AFTRA. In her affidavit, Sutro stated that her nude dances are appropriately choreographed and are an attempt to communicate as well as to entertain.

Timothy J. Corbett, a sergeant with the South Bend Police Department and stationed in the South Sector of South Bend where all arrests at Chippewa Bookstore have occurred, stated in his affidavit that no arrests have ever been made for nudity as part of a play or ballet.

## APPENDIX B

### II. Facts

#### A. S85-598

Cause number S85-598 is a suit for preliminary and permanent injunction brought by Darlene Miller and JR's Kitty Kat Lounge, Inc. ("Kitty Kat") against the City of South Bend, the Indiana Alcoholic Beverage Commission, South Bend's police chief, the prosecuting attorney for the county in which South Bend is located, and Indiana's Attorney General. Ms. Miller and the Kitty Kat contend that IC 35-45-4-1(a)(3) deprives them of their First Amendment right to present nude entertainment.

At the hearing on the preliminary injunction, the plaintiffs presented the testimony of Ms. Miller and Arthur Ford, who is the sole stockholder of the Kitty Kat. Their testimony, which was unrebutted, established the following:

The Kitty Kat sells alcoholic beverages and presents "go-go" dancing. The Kitty Kat made approximately $51,000.00 in 1985. Mr. Ford wants to present nude dancing to his patrons, but the Kitty Kat currently presents no "totally nude dancing". The Kitty Kat does not, and nobody intends for it to, present plays, ballet or the works of Shakespeare.

The Kitty Kat's dancers are not paid an hourly wage; instead they work on commissions: they receive 100% commissions on the first $60.00 in drink sales during their performance, and Mr. Ford keeps a careful accounting of the amount received by each dancer. The length of their working hours depends upon the number of dancers present. Mr. Ford cannot compel the Kitty Kat dancers to dance nude, although he may terminate the contract of a dancer who refuses to do so.

On July 27, 1985, Mr. Ford read of the issuance in another case, see Part V–C, *infra*, of an injunction against enforcement of the public indecency statute, and decided to present some nude entertainment. Kitty Kat dancers danced nude until about 2:50 a.m., when South Bend police officers informed Mr. Ford that arrests would be made if the nude dancing continued. The nude dancing stopped; no arrests were made. The Kitty Kat has never been engaged in a criminal case, at least not since Mr. Ford purchased the business in 1981.

Ms. Miller sells drinks and dances at the Kitty Kat. She has worked at the Kitty Kat for about two years and currently makes $250.00 to $300.00 per week. When she dances, Ms. Miller perceives herself as "just entertaining, just dancing". The avowed purpose of her dance is to try to get customers to like her so that they will buy more drinks later. Ms. Miller dances "go-go", sometimes fast, sometimes slow. She dances to music from a juke box. Ms. Miller wants to dance nude because she believes she would make more money doing so; at present, she wears "pasties" and a "g-string" when she dances, for fear of arrest. She danced nude on July 27, 1985

until the police arrived. Ms. Miller has no prior or pending criminal charges.

## APPENDIX C

### B. S85–722

Cause number S85–722 is a suit for preliminary and permanent injunctive relief brought by Sandy Diamond, Lynn Jacobs, 720 Corporation ("Ramona's Car Wash") and 726 Corporation ("Ace–Hi Lounge") against the same defendants as in cause number S85–598. These plaintiffs, too, contend that IC 35–45–4–1(a)(3) deprives them of their First Amendment right to present nude entertainment. They also appear to raise an allegation that the statute is overbroad.

At the hearing on the motion for preliminary injunction, the plaintiffs presented the testimony of Ms. Jacobs, Ms. Diamond and George Herring, who is secretary of Ramona's Car Wash and Ace–Hi Lounge and one of the corporations' two shareholders. Mr. Herring manages those establishments. Their testimony, which was unrebutted, established the following:

Ramona's Car Wash and Ace–Hi Lounge sell alcoholic beverages and present what Mr. Herring termed "exotic dancers". Ramona's Car Wash and Ace–Hi Lounge advertise alcohol and dancers; their wares are apparent to passers-by. Ramona's Car Wash and Ace–Hi Lounge hires "go-go" girls locally, and uses talent agencies to bring in dancers from other places to present "Vegas-style" acts. Ballet and Shakespeare plays are not presented at Ramona's Car Wash and Ace–Hi Lounge, but Mr. Herring noted that some of the dancers do comedy routines or a "little girl act".

Dancers at Ramona's Car Wash and Ace–Hi Lounge are not allowed to dance totally nude because the owners fear criminal prosecution. In July, the owners planned to present nude dancers in light of an injunction issued in an unrelated case, see Part V–C, *infra,* but South Bend police officers warned them not to do so. The owners of Ramona's Car Wash and Ace–Hi Lounge believe that presenting "totally nude" dancing would be good for business and bring in more customers. Mr. Herring conceded, however, that he has never worked in a tavern that presented nude entertainment, and was unaware of any local drinking establishment that features nude dancers.

Ramona's Car Wash and Ace–Hi Lounge have been involved in an arrest for underage drinking, but never in arrests for violation of the public indecency statute.

Ms. Jacobs is among the dancers featured at Ace–Hi Lounge. She describes herself as a "go-go" dancer. Ms. Jacobs dances for fifteen to twenty minutes as a juke box plays four songs. She buys outfits to wear when she dances, but her act consists of removing the outfits. Her act features no choreography; she simply takes the stage and dances. Ms. Jacobs believes she entertains the patrons in the establishment: they come in to see her, they applaud, they buy her drinks in appreciation of her performance. Her pay depends upon the number of drinks purchased, and she must sell a certain number of drinks to be paid. In a good week, Ms. Jacobs earns $500.00 to $600.00; in a bad week, she makes $100.00 less.

Ms. Jacobs does not dance nude; Ace–Hi management has instructed her not to dance nude for fear of prosecution. She wants to dance nude to produce more money for herself and for Ace–Hi Lounge, and she will dance nude if the injunction is granted in this case.

Ms. Diamond has worked at Ramona's Car Wash intermittently since February, 1985. She describes herself as an "exotic dancer". Ms. Diamond has traveled as an "exotic dancer" for seven years, and spent the previous four years in the Academy of Ballet. She has worked as an "exotic dancer" in many places in the continental United States, Canada, Guam, Puerto Rico and Japan. She has acted as an extra in motion pictures and on the Hawaii Five–O television show.

Ms. Diamond does not dance nude at Ramona's Car Wash; management has ordered her not to for fear of prosecution. In her seven years as an "exotic dancer", this is the third place she has found in

which she cannot dance nude. In her local performances, Ms. Diamond removes her clothing to reveal "pasties" and a "g-string"; occasionally, avowedly for theatrical effect, she leaves her gloves on as well. Ms. Diamond dances in costumes designed for her acts; she dances to her own taped music. Her acts are designed to "create a fantasy in the minds" of her patrons. She perceives herself to be acting when she dances, and believes, based upon the applause she receives, that she entertains those who see her perform. She will dance nude if the injunction is granted.

Ramona's Car Wash hires Ms. Diamond through Universal Entertainment of Massachusetts. She earns a weekly salary of $600.00, plus 25% of all drinks after the first $600.00; the agency receives a ten percent commission. She sells in the neighborhood of $900.00 in drinks each week she works. Ms. Diamond conceded that she can make more money elsewhere, but she prefers to work close to her South Bend home. Her base salary is not necessarily increased when she dances nude; that salary depends upon her publicity, recent films, costumes, and other considerations. Ms. Diamond's contract with Ramona's Car Wash prohibits nude dancing, but the contract could, according to Ms. Diamond, be amended easily.